## MARSHALL et al. v. PLETZ.
### No. 9896.

Circuit Court of Appeals, Ninth Circuit.
March 21, 1942.

Carl C. Donaugh, U. S. Atty., of Portland, Or., for appellant Wm. A. Marshall.

Wilbur, Beckett, Howell & Oppenheimer, H. B. Beckett, Robert T. Mautz, Harry L. Raffety, and David C. Pickett, all of Portland, Or., and John H. Black and James M. Wallace, both of San Francisco, Cal., for appellants Fireman's Fund Ins. Co. and others.

Wm. P. Lord and T. Walter Gillard, both of Portland, Or., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This is a proceeding to review a compensation order made under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.

Appellee Pletz, a longshoreman in the employ of McCormick Steamship Company, was injured November 12, 1935, while working in the unloading of a vessel on navigable waters at Portland, Oregon. On April 20, 1937, he filed a claim for compensation. The claim was controverted by the insurance carrier on the ground that no payments of compensation had been made and the claim was not filed within one year of the injury as prescribed by § 13(a) of the Act.[1] The deputy commissioner sustained the controversial and rejected the claim. Appellee then sought review under the appropriate provision of the Act, and after hearing the district court remanded the matter with directions to make specific findings concerning an asserted waiver or estoppel on the part of the insurance carrier.

Upon remand there was a hearing before the deputy commissioner at which considerable evidence was taken. The commissioner found that the claimant "has not been misled or overreached by the employer or insurance carrier," and his claim was again rejected because not filed in time. It was ordered, however, that the carrier furnish the claimant treatment by a psychiatrist for the cure of his disability.

A complaint for review was again lodged in the district court; and after the making of extensive findings, including one relating to the mental capacity of the claim-

---

[1] So far as pertinent, § 13 is as follows:

"§ 913. *Time for filing of claims.* (a) The right to compensation for disability under this chapter shall be barred unless a claim therefor is filed within one year after the injury, and the right to compensation for death shall be barred unless a claim therefor is filed within one year after the death, except that if payment of compensation has been made without an award on account of such injury or death a claim may be filed within one year after the date of the last payment. * * *

"(b) Notwithstanding the provisions of subdivision (a) failure to file a claim within the period prescribed in such subdivision shall not be a bar to such right unless objection to such failure is made at the first hearing of such claim in which all parties in interest are given reasonable notice and opportunity to be heard.

"(c) If a person who is entitled to compensation under this chapter is mentally incompetent or a minor, the provisions of subdivision (a) shall not be applicable so long as such person has no guardian or other authorized representative, but shall be applicable in the case of a person who is mentally incompetent or a minor from the date of appointment of such guardian or other representative, or in the case of a minor, if no guardian is appointed before he becomes of age, from the date he becomes of age. * * *"

ant, the court concluded that the carrier had waived the provisions of the Act requiring a timely filing of the claim and was estopped from asserting contrariwise. The deputy commissioner was directed to reject the controversial and to proceed to determine the amount of compensation to which claimant was entitled. This appeal followed.

It appears that as a result of the accident appellee was confined to the hospital for some weeks and was hospitalized a second time in February 1936. The carrier had immediate knowledge of the injury and made a prompt investigation to ascertain the rate of compensation, which rate it determined tentatively to be $14.23 per week. A draft for this amount was tendered the claimant two weeks after the injury, but the payment was not accepted because the claimant thought his prior earnings entitled him to a larger sum. Under date of November 15, 1935, the carrier filed with the deputy commissioner what is denominated "employer's first report of accident." In this report it was stated that medical attention had been authorized, that the injured person had not returned to work, and that he would suffer loss of time. Shortly afterwards the carrier's attending physician reported to the deputy commissioner that the disability of the claimant was the result of his injury and that the man would not be able to resume work for a period of from six weeks to three months. On November 26, 1935, the carrier filed with the deputy commissioner a form denominated "notice that the payment of compensation has begun without awaiting award." The notice states that "compensation shall be payable from the 20 day of November, 1935 until notice is given the deputy commissioner that payment has been stopped or suspended." A letter accompanying the notice stated that the carrier had ascertained the workman's average earnings and that he was entitled to compensation at the rate of $14.23 per week. The letter added "we are paying him at this rate." About a week later, however, the carrier wrote the deputy commissioner that compensation had been tendered the claimant on account of the injury, but that claimant had refused to accept the same. On January 10, 1936, the deputy commissioner advised the carrier that if the period of disability had extended beyond 49 days, claimant should be compensated for the first week, pursuant to § 6. The carrier acknowledged this letter the next day, stating that "up to the present time Mr. Pletz has not accepted compensation."

Nothing further appears in the official records of the deputy commissioner until November 5, 1936, at which time a letter was directed to the carrier stating: "This is the case in which you advised the injured man had refused to accept compensation in December 1935. For completion of our file to date kindly advise as to the present status of the matter." The following day the carrier wrote acknowledging this letter and advising "that at the present time Mr. Pletz claims to be suffering from certain subjective symptoms," and that the doctor furnished by the carrier has been unable to find any objective symptoms. The carrier did not advise the commissioner in respect of the status of payments of compensation, whether any had been made, whether payments had been suspended, or whether the claimant had continued to refuse to accept the compensation tendered. On March 2, 1937, there was a further request for additional reports as to the status of the matter subsequent to November 6, 1936. In response, the carrier stated that "this man still claims to be suffering from disability resulting from the accident," and that "his chief aim seems to be to effect a lump-sum settlement" and to secure an agreement for perpetual medical care.

Supplementing this unusual record, we have the testimony of representatives of the insurance carrier taken at the hearing before the deputy commissioner after the cause had been remanded. From this testimony it appears that for a long time following upon the injury the carrier continued to recognize its obligation to pay compensation to appellee at a fixed weekly rate. It was understood on both sides that this weekly amount was based on a condition of total disability, either temporary or permanent as the case might prove. By the time the injured man had completed his second stay in the hospital —March 13, 1936—the carrier had ascertained that he was entitled to compensation at the somewhat higher rate of $14.99 per week. Weekly payments at this rate continued to be offered him until at least as late as the end of April 1936, and perhaps much longer, certainly until well within a year of the time he filed his formal claim. There is during this period no

suggestion that his disabling injury was thought to have been cured or that the carrier believed appellee was able to return to work. The representative of the carrier in immediate charge of the case thought that the disability was probably terminated several months prior to September 1936, but the precise date of the supposed termination is not stated. No intimation of this belief was conveyed at the time either to the commissioner or to appellee. When asked why a controversial was not filed with the deputy commissioner because of the supposed recovery, this witness stated that there was no reason to file a controversial and that he did not understand that a report controverting the claim was due. The explanation of this attitude appears to lie in the fact that appellee was declining to accept the compensation tendered, asserting that his prior earnings entitled him to a larger weekly sum or that he would prefer a lump-sum settlement. In short, the carrier appears to have assumed that under the circumstances it was entitled to defer controverting liability until a formal claim was filed; and it is to be gathered that the deputy commissioner was of the same opinion.

 We are satisfied that in this both the carrier and the commissioner mistook the requirements of the Act. Reference will presently be made to other provisions leading to this conclusion, but for the moment we examine § 13(a) upon which the carrier relies. By that section an injured employee is given a year after cessation of voluntary payments within which to file a claim. Obviously, so long as payments continue it is the statutory theory that there is no occasion for filing a claim; but where payments are stopped or suspended the employee is put on notice that he must make formal claim within a year thereafter or forego further compensation. By a parity of reasoning where, as here, there is a continuing offer amounting to a tender of compensation based on a condition of total disability, the employee is entitled to assume that the carrier holds itself in readiness to pay the sums periodically offered;[2] and that he may dispense with the filing of a claim so long as that situation persists. We think, therefore, that the time limit prescribed by § 13(a) applies not only to cases where compensation is actually paid, but to situations where the statutory compensation is tendered; and that the time limit does not commence to run until the continuing offer is withdrawn or the right to further payment controverted. For the purpose of the limitation, tender must be held the equivalent of payment.

 The conclusion we have reached as to the proper interpretation of § 13 is not only fortified but is virtually compelled by a perusal of § 14, the pertinent portions of which are copied on the margin.[3] There is little need to analyze the elaborate

---

[2] When pressed for his reasons for persistently failing to accept the compensation offered, appellee, with the irresistible logic of the unlettered, said: "* * * I had a little money and I thought the money was as good there as if I had it, if I had it I could spend it, and Mr. Pickett said that he would settle with me, and I thought that I had that money there, and I could have it at any time I wanted it."

[3] "*Payment of compensation.* (a) Compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer.

"(b) The first installment of compensation shall become due on the fourteenth day after the employer has knowledge of the injury or death, on which date all compensation then due shall be paid. Thereafter compensation shall be paid in installments, semimonthly, except where the deputy commissioner determines that payment in installments should be made monthly or at some other period.

"(c) Upon making the first payment, and upon suspension of payment for any cause, the employer shall immediately notify the deputy commissioner, in accordance with a form prescribed by the commission, that payment of compensation has begun or has been suspended, as the case may be.

"(d) If the employer controverts the right to compensation he shall file with the deputy commissioner on or before the fourteenth day after he has knowledge of the alleged injury or death, a notice, in accordance with a form prescribed by the commission, stating that the right to compensation is controverted, the name of the claimant, the name of the employer, the date of the alleged injury or death, and the grounds upon which the right to compensation is controverted.

"(e) If any installment of compensation payable without an award is not paid within fourteen days after it be-

and imperative provisions of § 14. Their obvious purpose is to render impossible of occurrence a failure of justice in the case of known disabling injuries falling within the terms of the Act. The central principle of this statutory scheme is that the employer shall pay compensation "periodically, promptly, and directly to the person entitled thereto, without an award," except only where liability is controverted. If for any cause the employer considers that his obligation to make such payments has terminated, he must immediately and unequivocally make his position known. In the face of these blunt requirements the carrier can not admit liability and profess readiness at all times to pay the statutory compensation and then, when a claim therefor is filed, controvert liability on the ground that he has not performed his duty to make the payments and the claim therefore comes too late. The carrier here has suffered no prejudice because of the recalcitrant attitude of the employee in failing to accept the offered compensation. It is perhaps relieved of the obligation to pay the 10 per centum penalty imposed by subsection (e), but in all other respects it remains subject to the requirements of the Act.

The decree of the district court is affirmed.

HANEY, Circuit Judge (dissenting).

I am unable to agree with either the reasoning or result set forth in the majority opinion for the following reasons:

Where, as here, the carrier promptly tenders a specified sum which is refused by the claimant for any reason, the claimant has a year from the time of his injury within which to reach an agreement with the carrier as to amount of compensation, or, failing that, to file a claim.

The effect of the majority opinion is to amend the statute so that the one-year period runs from the date of the "last tender" rather than from the date of the "injury" as is specified in the statute. The result of such amendment is to open, for each claimant, a way to indefinitely suspend the statute by merely failing to accept a tender. Such construction does not contribute to "prompt" disposition of the matter, an aim said in the majority opinion to be desired.

The majority further says: "For the purpose of the limitation, tender must be held the equivalent of payment". How there can be payment of a claim, the amount of which is not yet determined, is not clear. However, if the tenders were payment, then it is clear that claimant has been paid an amount in full satisfaction of his claim, which he is now contending is wholly insufficient. In addition, if claimant has been paid for the period for which tenders were made, then I assume he can not again force the carrier to pay for the same period, and his claim is thus reduced. This appears to me to be an unnecessary and unwise limitation.

It seems to me that the basic error of the majority opinion is that it rests upon construction by judicial legislation. It has been said that the province of the court is jus dicere and not jus dare. Amendment of the statute should be left to Congress.

In my opinion the order should be reversed.

---

comes due, as provided in subdivision (b) of this section, there shall be added to such unpaid installment an amount equal to 10 per centum thereof, which shall be paid at the same time as, but in addition to, such installment, unless notice is filed under subdivision (d) of this section, or unless such nonpayment is excused by the deputy commissioner after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.

\* \* \* \* \* \* \*

"(h) The deputy commissioner (1) may upon his own initiative at any time in a case in which payments are being made without an award, and (2) shall in any case where right to compensation is controverted, or where payments of compensation have been stopped or suspended, upon receipt of notice from any person entitled to compensation, or from the employer, that the right to compensation is controverted, or that payments of compensation have been stopped or suspended, make such investigations, cause such medical examinations to be made, or hold such hearings, and take such further action as he considers will properly protect the rights of all parties. \* \* \*" 33 U.S.C.A. § 914.