MARSHALL, DEPUTY COMMISSIONER, U. S. EMPLOYEES' COMPENSATION COMMISSION, ET AL. *v.* PLETZ.

No. 93.   Argued November 19, 1942.—Decided January 4, 1943.

*Mr. Robert T. Mautz,* with whom *Messrs. Carl C. Donaugh* and *E. K. Oppenheimer* were on the brief, for petitioners.

*Mr. William P. Lord,* with whom *Mr. Ben Anderson* was on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The importance of questions presented in this case in the administration of the Longshoremen's and Harbor Workers' Compensation Act,[1] as well as a conflict of decisions,[2] impelled us to grant certiorari.

The respondent, a longshoreman and maritime worker employed by the petitioner McCormick Steamship Company in loading a steamship, was injured November 12, 1935. He filed a claim before the petitioner Marshall, a deputy commissioner, April 20, 1937. The petitioner Fireman's Fund Insurance Company, which insured the employer against liability arising under the Act, appeared at the first hearing set by the deputy commissioner and objected that the claim was untimely filed.[3] The respondent asserted that the insurer had, by conduct and negotiations with him, waived the right to object to the claim on the ground stated. After hearing witnesses the deputy commissioner made findings of fact on which he based

---

[1] March 4, 1927, c. 509, 44 Stat. 1424, 33 U. S. C. c. 18.

[2] *Fulton* v. *Hoage,* 77 F. 2d 110.

[3] Sec. 13 of the Act (33 U. S. C. 913) provides: (a) "The right to compensation for disability under this chapter shall be barred unless a claim therefor is filed within one year after the injury, . . . except that if payment of compensation has been made without an award on account of such injury . . . a claim may be filed within one year after the date of the last payment"; and (b) that the bar shall not be effective unless objection to the failure to file is made "at the first hearing of such claim in which all parties in interest are given reasonable notice and opportunity to be heard." There are other exceptions in paragraphs (c) and (d) which are here irrelevant.

ultimate findings that the claim was not filed within one year after the injury and that the respondent had not been misled or overreached by the employer or the insurance carrier, and dismissed the claim.

The respondent filed his bill in the District Court, praying that the order be set aside as "not in accordance with law." [4] A motion to dismiss was filed and, after hearing, the court remanded the case to the deputy commissioner with instructions to make findings of fact upon all the issues involved and with leave to consider all the evidence already taken and any other further evidence which might be offered as a basis for such findings. Further evidence was taken, the deputy commissioner made detailed findings of fact, and again concluded that neither the employer nor the insurance carrier had misled the respondent and that neither the carrier nor the employer had waived, or estopped themselves to rely upon, the limitation set by the statute. Thereupon the respondent supplemented his bill and the petitioners moved to dismiss. The court heard the case upon the record certified by the deputy commissioner, but upon that record made its own independent findings of fact. Its conclusions, based on its findings, were that the insurance carrier was estopped to assert that the claim was not timely filed and had waived any defense on that ground. The court set aside the orders of the deputy commissioner and directed him to enter a further order rejecting the objections to the claim and holding it to be in all respects valid, and to proceed to ascertain the amount of compensation due the respondent.

The insurance carrier, the employer, and the deputy commissioner appealed to the Circuit Court of Appeals. That court affirmed the decision of the District Court, one judge dissenting.[5]

[4] As permitted by § 21 (b) of the Act, 33 U. S. C. 921 (b).
[5] 127 F. 2d 104.

On the day of his injury respondent was sent to a hospital by the employer. He remained there until about Christmas 1935. A representative of the insurer called on him there, received a statement of his injury, and, within the time required by the statute, tendered him a check for the first installment of compensation due him, calculated according to his weekly earnings as nearly as the same could be ascertained from employment records. Respondent refused the check on the ground that it was not for as much as his earnings justified. It was explained to him that any deficiency could be adjusted as soon as the insurer or he could ascertain the facts more accurately. After leaving the hospital, respondent called on the attorney of the insurer, was again tendered payment of compensation, and again refused it on the ground that it was inadequate. At that time the insurer had some supplementary information and, as a result, advised respondent that it was ready to pay him compensation at a rate slightly in excess of that originally offered.

After refusing compensation, the respondent consulted an attorney who advised him that he had a cause of action against his employer for damages, notwithstanding the provisions of the Compensation Act. He subsequently told the insurer's attorney that he had been so advised.

The respondent's disability necessitated a return to the hospital in February 1936. While there, his present counsel saw him, advised him that he had no valid claims against any third party or his employer, and that he ought to take compensation. On leaving the hospital, respondent continued to receive medical aid which was furnished by the insurer, as was all medical care theretofore.

Respondent repeatedly called upon the insurer's attorney, who consistently advised him that he ought to accept compensation. There is dispute as to who broached the subject of a lump sum settlement in these conversations. Respondent says the attorney did. The

latter insists that the respondent demanded such a settlement; that he explained that no such settlement could be made under the statute until all disability had terminated and the consent of the deputy commissioner had been secured. It seems to be agreed that the respondent repeatedly said he wanted a lump sum settlement with medical care for the indefinite future, and it appears that the attorney insisted that no such settlement could be made.

Sometime in the summer of 1936 the respondent again discussed his case with his present counsel and was again advised that he should accept compensation. There is credible evidence that the respondent called on the deputy commissioner within a year of his injury, was informed that if the amount of compensation tendered him was not the proper amount this could easily be adjusted by reference to the rolls at the employment office, and that he then told the deputy commissioner a lawyer had advised him he could disregard the compensation act and bring an action to recover for his injuries. Respondent insisted, however, that this conversation took place after the year had expired.

The employer, or the insurer, promptly notified the deputy commissioner of the injury, that medical treatment was being furnished and compensation would be paid. Early in December of 1935 the insurer wrote the deputy commissioner that respondent had refused to accept compensation. In answer to an inquiry of the deputy commissioner, the insurer repeated this information in a letter dated January 10, 1936. There was no further correspondence in the matter until November 5, 1936, when the deputy commissioner inquired regarding the status of the case and was advised by the insurer's attorney that the respondent still claimed a disability, the existence of which the attorney doubted, but that respondent was receiving medical care, and seemed more interested in a

lump sum settlement and perpetual medical care than in receiving compensation.

There seems to be no doubt that respondent and insurer's attorney talked repeatedly about the respondent's physical condition and the disposition of his case. There would seem to be little doubt on the evidence that he was repeatedly tendered compensation and refused it.

These are the facts in broad outline. It is unnecessary to recite the evidence in detail. What has been said indicates that issues of fact were presented and that there was substantial evidence to support the findings of the deputy commissioner.

*First.* The findings of the deputy commissioner supported his order. The District Court could not have set aside the order without retrying the issues of fact and making new and independent findings based upon its own appraisal of the evidence. But, under the overwhelming weight of authority in this and in the lower federal courts, the statute granted no power to the District Court to try these issues *de novo.*[6]

*Second.* The Circuit Court of Appeals, in affirming the District Court's judgment, did not rely upon that court's resolution of the issues of fact raised before the deputy commissioner. It based its decision on a matter of law. In the light of the uncontradicted fact that the insurance carrier had tendered compensation and had kept its tender good down to within less than a year before the filing of respondent's claim, the majority of the court concluded that a tender of compensation was the equivalent of payment of compensation without an award within the intent and meaning of § 13 (a) of the statute.[7] It found

---

[6] *Crowell* v. *Benson*, 285 U. S. 22, 46, 66–72; *South Chicago Coal & Dock Co.* v. *Bassett*, 309 U. S. 251, 257. The cases in the lower courts are collected in 33 U. S. C. A. § 921, Note 3, pp. 216–218.

[7] *Supra*, Note 3.

support for its view in the provisions of § 14 of the Act,[8] which require an employer or insurer who denies liability to file with the deputy commissioner a notice of controversy so as to bring on the question of liability for decision.

We think this construction of the Act inadmissible. Tender is not payment. The insurer at no time denied liability but continuously admitted it and expressed its desire to pay compensation. Laying aside, as the Circuit Court of Appeals properly did, questions of waiver and estoppel, there was nothing to prevent the respondent's filing his claim as the Act contemplates [9] if the insurer neglected to pay compensation. If he refused to accept payment and refrained from filing a claim, whether because he believed he had a cause of action against a third party or against his employer, or for any other reason, he was none the less bound to present his claim within the time fixed by the statute. The fact that the insurer was willing to pay compensation, which he refused, does not bring him within the exception stated in § 13 (a).

*Third.* At the argument at our bar it was suggested that the judgment below might be sustained on another ground, namely, that the furnishing of medical care to the respondent up to a time well within a year of the presentation of his claim was payment of compensation within the meaning of § 13 (a). On this theory it was urged that the one year period within which a claim must be filed would run from the date of the last rendition of medical care.

At the insistence of respondent's counsel, the deputy commissioner took an opposite view. While he denied compensation in the form of money payments to the respondent, he ordered the continuance of medical care. This was upon the theory that the Act treats the employer's obligations to pay compensation and to render medical aid as independent.

---

[8] 33 U. S. C. § 914.

[9] 33 U. S. C. 914 (h), 919 (a) (c).

Although the point is raised for the first time in this court, if we find it meritorious we may consider it as supporting the judgment below.[10]  We hold, however, that the furnishing of medical aid is not the "payment of compensation" mentioned in § 13 (a).  Section 2 of the Act[11] is devoted to definitions, one of which is: "(12) 'Compensation' means the money allowance payable to an employee or to his dependents as provided for in this chapter, and includes funeral benefits provided therein."

Section 6 provides "(a) No compensation shall be allowed for the first seven days of the disability, except the benefits provided for in § 7 of this chapter."  The benefits covered in § 7 are the medical services which the employer is bound to furnish, but that section significantly provides that, if the employe refuses to submit to medical treatment, the deputy commissioner may, by order, "suspend the payment of further compensation during such time as such refusal continues, and no compensation shall be paid at any time during the period of such suspension, unless the circumstances justified the refusal."  Here compensation is contrasted with medical aid.

Section 8 is entitled "Compensation for disability." The section deals solely with money compensation.

Section 10 states that, "except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation . . ."

Section 14 deals throughout with what it terms "compensation."  All of its provisions have to do with the periodic money payments to be made to the injured employe and make no reference to medical care.

---

[10] *Langnes* v. *Green,* 282 U. S. 531, 536, and authorities cited.

[11] The sections referred to in the following discussion are found in 33 U. S. C. under the same section numbers as are used in the original Act, except that each is prefixed with the figure "9"; e. g., section 2 appears in the code as section 902.  In the interest of brevity we shall refer to them as they appear in the Act as it is printed at 44 Stat. 1424.

Section 4 of the Act, it is true, refers "to the compensation payable under §§ 7, 8, and 9." It may be argued that as 7 is the section dealing with medical care, Congress meant to include such care within the term "compensation." In the normal case, however, the insurer defrays the expense of medical care but does not pay the injured employe anything on account of such care. Only if the employer and the insurer omit to furnish such care can the employe procure it for himself and then obtain from the deputy commissioner an award to reimburse him for what he has spent.

In the light of all the provisions of the Act, we are persuaded that the terms "payment" and "compensation" used in § 13 (a) refer to the periodic money payments to be made to the employe.

The judgment is reversed and the cause is remanded to the District Court for further proceedings in conformity to this opinion.

*Reversed.*

MR. JUSTICE BLACK dissenting, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MURPHY concur.

It has been said that the Act under consideration "should be construed liberally in furtherance of the purpose for which . . . enacted and, if possible, so as to avoid incongruous or harsh results." *Baltimore & Philadelphia Steamboat Co.* v. *Norton,* 284 U. S. 408, 414. The construction given the Act by the court below, which I think was correct, avoids such a result. The result of the construction here is to deprive an injured person of the compensation which the law intended he should have and which the insurance company, defendant, has admitted it owes. The only defense is a one-year statute of limitations, and that defense was not set up under circumstances that square with the Act's purposes. What are those circumstances?

These facts are undisputed: November 12, 1935, Pletz was injured while working for a steamship company which carried liability insurance with the Fireman's Fund Insurance Co., one of the petitioners here. November 26, 1935, the insurance company's attorneys reported to the deputy commissioner administering the Act that payments to Pletz had begun and would continue until notice was given the commissioner. The insurance company did tender a check to Pletz while he was in the hospital which he declined because he thought it insufficient, and on December 4, 1935, the insurance company advised the Commissioner of the refusal. Negotiations between Pletz and the insurance company continued through repeated conversations for a year and five months. The company lawyer testified that "I made the definite offer to him very early in the case that I would pay him his compensation any time he wanted to take it . . . and I told him that I made that offer and that he could take it any time he wanted to. . . ." It is apparent that the controversy throughout was not over the existence of a just claim, but over its size.

November 5, 1936, while negotiations were still in progress, and only seven days before the expiration of the year, the Commissioner wrote the attorney asking about the status of the claim. The attorney responded six days before the statute is said to have operated. He gave no information that Pletz had never accepted compensation, and reported only that he had put Pletz under a doctor's care and that no report had been received from the doctor. If the Commissioner had thought that the claim was controverted, he would have been obligated under § 14 (h) of the Act to hold hearings and take action "upon his own initiative" to protect the rights of the parties. Under that section such a course is required where payment has been stopped or suspended. Instead, the insurance company attorney, according to his own testimony, continued

to negotiate with Pletz until his claim was finally filed on April 19, 1936. The claim itself was filled out in the company lawyer's office without a hint of limitations. Then, for the first time, the company "filed its controversial" with the Commissioner and pleaded in it the statute of limitations.

The Commissioner found in substance that there had been no over-reaching of Pletz by the company and that therefore the company was not estopped from setting up the statute. Accepting his finding of facts, I think that the Commissioner's conclusion was based on an erroneous conclusion of the law concerning estoppel and limitations, and that the continuous process of negotiation and communication between the company, Pletz, and the Commissioner, bar the defense made here.

In *Schroeder* v. *Young*, 161 U. S. 334, 344, this Court said:

"Defendant relies mainly upon the fact that the statutory period of redemption was allowed to expire before this bill was filed, but the court below found in this connection that before the time had expired to redeem the property, the plaintiff was told by the defendant Stephens that he would not be pushed, that the statutory time to redeem would not be insisted upon, and that the plaintiff believed and relied upon such assurance. Under such circumstances the courts have held with great unanimity that the purchaser is estopped to insist upon the statutory period, notwithstanding the assurances were not in writing and were made without consideration, upon the ground that the debtor was lulled into a false security."

Here, the insurance company's representative has sworn, and his evidence is undisputed, that he promised to pay Pletz "his compensation any time he wanted to take it," a statement which was never withdrawn, and which in connection with the continued negotiations for a lump sum settlement, even after the statutory period had ex-

pired, was more than an equivalent of an express promise not to plead the statute of limitations. It is perhaps an understatement to say that the company attorney's conduct was a tacit encouragement to Pletz to act on the assumption that the company would never dispute its constantly admitted liability. *Swain* v. *Seamens,* 9 Wall. 254, 274. The statement of the Supreme Court of Illinois is in harmony with the general rule of law throughout the country: "Where an insurance company leads a party to delay the bringing of suit, or to dismiss a suit already pending, by holding out hopes of adjustment, or by making promises to pay, it is estopped from taking advantage of such delay or dismissal, by pleading the statute of limitations." *Railway Conductors' Benefit Assn.* v. *Loomis,* 142 Ill. 560, 572, 32 N. E. 424, 427; cf. *Ennis* v. *Pullman Palace Car Co.,* 165 Ill. 161, 178, 46 N. E. 439; *O'Hara* v. *Murphy,* 196 Ill. 599, 63 N. E. 1081. See also *Howard* v. *West Jersey & Seashore R. Co.,* 102 N. J. Eq. 517, 522, 147 A. 755; *Baker-Matthews Manufacturing Co.* v. *Grayling Lumber Co.,* 134 Ark. 351, 354, 355, 203 S. W. 1021; *McLearn* v. *Hill,* 276 Mass. 519, 177 N. E. 617. These cases illustrate the principle announced by this Court "that where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage." *Insurance Company* v. *Wilkinson,* 13 Wall. 222, 233.