OLDMAN BOILER WORKS, Inc., et al. v. McMANIGAL, Deputy Com'r, U. S. Employees Compensation Commission, et al.

Civil Action No. 1779.

District Court, W. D. New York.

Dec. 9, 1944.

Adams, Smith, Brown & Starrett, of Buffalo, N. Y., for plaintiffs.

George L. Grobe, U. S. Atty., of Buffalo, N. Y. (Austin J. Donovan, Asst. U. S. Atty., of Rochester, N. Y., of counsel), for defendant McManigal.

George E. Phillies, of Buffalo, N. Y., for defendant Brayman.

KNIGHT, District Judge.

The defendant, Brayman, has been employed for about twenty-eight years by the plaintiff, Oldman Boiler Works, Inc. He has worked as boiler maker and burner, usually upon boats. On February 3, 1943, he was working inside of a boiler when he became weak, short of breath and collapsed.

By order of the employer he was taken to the company doctor and there treated.

Thereafter the application for compensation came to the United States Employees' Compensation Commission under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950, and hearings were held before defendant, Deputy Commissioner McManigal. After hearing the testimony, the Commissioner found the employee to be 100 percent permanently disabled with silicosis. An award was accordingly made.

The employer and the insurance carrier now attack the award upon the ground that the findings of the Commission are contrary to law and based upon erroneous findings of essential facts. This has been denied by the defendants, who now move for summary judgment.

▮ The court has examined the record of the testimony before the Commission and has seen the exhibits. In so doing we have not weighed the evidence, for that we cannot do. We seek only to discover if there is evidence upon which the findings of the Commission may be based. Grain Handling Co., Inc., v. McManigal, D.C., 23 F.Supp. 748, affirmed Grain Handling Co. v. Sweeney, 2 Cir., 102 F.2d 464; Grain Handling Co. v. McManigal, 308 U.S. 570, 60 S.Ct. 83, 84 L.Ed. 478; Groom v. Cardillo, 73 App.D.C. 358, 119 F.2d 697; Lumber Mutual Cas. Ins. Co. of New York v. Locke, 2 Cir., 60 F.2d 35; Henderson v. Jones, 5 Cir., 110 F.2d 952; Southern S.S. Co. v. Norton, 3 Cir., 101 F.2d 825; Marshall v. Pletz, 317 U.S. 383, 63 S.Ct. 284, 87 L.Ed. 348.

▮ The complaint alleges the failure to give the required notice, but the plaintiff makes no point of this in its brief submitted to this court.

There can be no doubt that the actual written 30 day notice required under the Act was not given. Because of the mitigating circumstances here, it was not essential—the act of the employer's treasurer in sending the employee to the company doctor and his treatment gave the employer notice. The fact that he did not return to work was notice to the employer. There has been no showing of injury or prejudice to the employer because the notice was not given, nor has the employer stressed it in its brief. See: Wnukowski's Case, 296 Mass. 63, 5 N.E.2d 3; 145 A.L.R. 1293; Standard Water Systems Co. v. Ort, 160 A. 523, 10 N.J.Misc. 659; 92 A.L.R. 515; Grain Handling Co. v. McManigal, supra. It was raised at the hearing before the Commissioner, and he held there was no prejudice to the employer thereby. See 33 U.S.C.A. § 912(d).

We come now to the main question of whether or not there was evidence upon which the Commissioner could base a claim for finding 100 percent permanent disability due to silicosis. There was testimony that the employee had worked as a boiler maker and burner for the employer for about twenty-eight years. His duties largely were such that he would go into boilers, usually upon boats, through a small manhole about 12x15 inches which was also the only means of ventilation, and then clean and repair the boilers. On February 3, 1943, while working on a lake-boat he became weak, had a shortness of breath and collapsed. He was immediately taken to the company doctor and was hospitalized. The Company doctor and another doctor made examination and diagnosis. He was subsequently examined by a third doctor employed by the insurance carrier. The reputations and qualifications of all of these medical men were established before the Commissioner.

Two physicians called by the respondent-claimant have testified specifically that claimant was suffering from pulmonary fibrosis and that the conditions under which he was employed were a sufficient contributing cause for this condition; and that he was totally disabled. One of the physicians called by the respondent also testified that he interpreted the Xrays as showing "pneumoconiosis, probably of silicatic nature." Plaintiffs' physician also testified that he found there was "generalized fibrotic or nodular type of marking" and also that he believed that there could be a causal relation of respondent's condition, as given in his history, with the fibrosis. The record discloses that there was a considerable amount of dust created in the work of the claimant and that the only ventilation was a small manhole. The claimant described with some detail the conditions as regards dust within the boilers.

The plaintiffs moved to dismiss the proceedings before the Commissioner, upon the ground that there was a failure of proof connecting the man's condition with his employment. So far as can be seen the only basis for this ground is the lack of proof as to the particular type of dust in

which the claimant worked; the number of microns per square inch; and that the microns of such dust were less than 10 molicules, or of a size which could be drawn into the lungs. The Commissioner seems to have created some confusion in his view as to the necessity of this proof in stating, upon objection being made to a physician's testifying as to the causal relationship between the employment and the conditions found, that:

"Of course, that is an important thing in any pneumoconiosis case is to know the dust count and the extent of it and content of what the dust was, what it was composed of. That is an important element. Of course, those are the elements usually used by the doctor in diagnosis on that but this diagnosis may be questioned on the basis of not knowing the kind of dust it was whether it was silicosis or asbestoses, or general pneumoconiosis dust, and without knowing the number of microns per square foot and the size of them under ten to be taken into the lungs. I suppose the doctor's diagnosis is more or less limited along that line. * * * I will allow the doctor to answer the hypothetical question based on the history he had plus the findings subject to that objection and the necessity of clearing up the dust content proposition and content of the dust."

Just what the Commissioner meant when he said "diagnosis may be questioned on the basis of not knowing the kind of dust it was" is somewhat obscure, but the whole statement is taken to mean that the doctor's opinion may be predicated, either upon proof of the conditions in which the claimant worked, with or without any knowledge as to the particular nature of the dust and the number and size of the microns therein, or with such additional proof. It is to be said that there is some evidence as to the nature of the dust.

It is certainly true, as pointed out in the numerous cases cited by the plaintiffs, that decision of the Commissioner can not be sustained unless supported by some evidence. Many of the cases so cited are directed to this one question. No case cited in the briefs, or to which the court's attention has been called, has held that it is necessary, in order to sustain a claim for disability of this type the number of microns per square foot and that the size of these were such that they could be introduced into the lung tissues must be shown to base any award.

In the instant case the claimant testified that the dust where he worked was called soot, that "it lays in the flues and comes from the back end out and travels through the flues and accumulates there"; that the dust accumulated on his clothing; the dust and soot from the tubes entered his nostrils; that he coughed up hunks of phlegm with dust and dirt in it; that there was dust in the boiler room where he worked; that there was a boiler room where the boilers were where he worked; and in the hold; that he worked in the hold approximately five years and during that time he was burning as well as blowing out flues and welding; that "we burn the tubes out. That is where your dust is is in the tubes. After you got the boilers torn down and winter work it is all dusty. You are inside the shell," and dust is flying all around.

Based upon the foregoing and other descriptions of conditions under which the claimant worked, the two physicians called on behalf of the claimant testified that they were a sufficient contributing cause for the fibrosis which they found. It seems to me that the proof here is sufficient to sustain the decision of the Commissioner notwithstanding lack of proof of the particular qualities of the dust and the number and size of the microns. The plaintiffs herein had better opportunity than did the claimant to show these things, and, if the claimant, lacking that particular proof, shows, as he did here, the conditions under which the claimant worked and conditions found upon their examinations to be such that it may reasonably have been attributed to condition of work, the burden then shifted to the plaintiffs to show particular specifications of the dust particles.

As hereinbefore pointed out, this court is bound by the decision of the Commissioner if there is substantial evidence to support it, irrespective to what conclusions the court might make if sitting as a court in the first instance.

The motion for summary judgment is granted.