PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

STEPHANIE H. WHEELER,

*Petitioner,*

v.

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS,

*Respondents.*

No. 10-1164

On Petition for Review of an Order
of the Benefits Review Board.
(09-0570)

Argued: December 9, 2010

Decided: February 15, 2011

Before AGEE and WYNN, Circuit Judges,
and Patrick Michael DUFFY, Senior United States District
Judge for the District of South Carolina,
sitting by designation.

Affirmed by published opinion. Judge Agee wrote the opin-
ion, in which Judge Wynn and Senior Judge Duffy joined.

## COUNSEL

**ARGUED:** Gregory Edward Camden, MONTAGNA,
KLEIN, CAMDEN, LLP, Norfolk, Virginia; Matthew W.

Boyle, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Petitioner. Jonathan Henry Walker, MASON, MASON, WALKER & HEDRICK, PC, Newport News, Virginia, for Respondent. **ON BRIEF**: M. Patricia Smith, Solicitor of Labor, Rae Ellen James, Associate Solicitor, Mark Reinhalter, Counsel for Longshore, Patricia M. Nece, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for the Director, Office of Workers' Compensation Programs.

---

**OPINION**

AGEE, Circuit Judge:

I.

Petitioner Stephanie H. Wheeler appeals from a decision of the Benefits Review Board ("the Board"),[1] denying her claim for benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950 ("LHWCA" or "the Act"). Respondent Newport News Shipbuilding and Dry Dock Company ("the Employer") opposes the relief sought by Wheeler. The Director, Office of Workers' Compensation Programs, United States Department of Labor ("the Director"), supports Wheeler's petition in this matter and joins in her request for reversal of the Board's decision.

---

[1]The Benefits Review Board, an agency of the Department of Labor, is the administrative appeals board for decisions of an administrative law judge ("ALJ") arising under several statutes, including the Act. The Board has authority to review the decision of an ALJ in order to determine whether the ALJ's findings are "supported by substantial evidence in the record as a whole, are rational, and are in accordance with the law." *Gilchrist v. Newport News Shipbuilding & Dry Dock Co.*, 135 F.3d 915, 918 (4th Cir. 1998) (citations omitted). The Board's decisions may be appealed to the U.S. court of appeals in the circuit where the injury arose. 33 U.S.C. § 921(c).

Because we conclude that the term "compensation" in Section 22 of the Act does not include the payment of medical benefits, we affirm the Board's decision.

## II.

### A.

This case requires us to determine the meaning and scope of the term "compensation," as used in Section 22 of the LHWCA.[2] In particular, we must decide whether "compensation" under that statute includes voluntary payments by an employer to a claimant's medical providers.

The pertinent facts are undisputed. On May 26, 1992, Wheeler sustained an injury to both knees while working for the Employer. She sought and was awarded scheduled permanent partial disability compensation, as well as a period of temporary total disability compensation. Wheeler later sought continuing permanent total disability compensation, which the Employer contested. On August 14, 2002, the Administrative Law Judge ("ALJ") issued an order denying Wheeler's claim for permanent total disability compensation. Wheeler appealed, and the Board affirmed on September 12, 2003. No further appeal was taken from that order, and by that date, the Employer had completed its compensation payments for Wheeler's scheduled permanent partial disability.[3]

---

[2]Sections referred to herein are found in 33 U.S.C. with the same section numbers as are used in the Act except each is prefixed with a 9, *e.g.*, Section 7 refers to 33 U.S.C. § 907.

[3]Although Wheeler's partial disability was determined to be "permanent," it was a scheduled disability under § 902(c)(2). (*See* J.A. 64.) Scheduled disability benefits are "payable for a specific duration regardless of the actual impact of the disability on the claimant's prospects of returning to . . . work." *ITO Corp. of Baltimore v. Green*, 185 F.3d 239, 242 n.3 (4th Cir. 1999) (describing the "apples-and-oranges" approach of the statute depending on whether a particular disability is within the schedule or not).

Since the 2003 decision, Wheeler continued to seek regular medical treatment for her knees, which the Employer authorized and paid. This treatment included surgeries in 2006 and 2008 for a right total knee arthroplasty and left knee arthroplasty, respectively.

On September 13, 2007, Wheeler submitted a request for modification of her permanent partial disability award, pursuant to Section 22 of the Act, once again seeking total disability benefits as a result of the deteriorating condition of her knees. Specifically, Wheeler sought temporary total disability from June 20, 2006 to June 13, 2007, temporary partial disability from June 14, 2007 to September 5, 2007 and temporary total disability from September 6, 2007 to the present and continuing.

Her request for modification was rejected as untimely by an ALJ Decision and Order because the request was not filed within one year "after the date of the last payment of compensation" or "after the rejection of a claim," as set forth in Section 22. While Wheeler's request for modification was filed within one year of when the Employer last paid medical benefits on Wheeler's behalf, it was filed more than four years after the Board's last order in 2003 denying her claim for permanent total disability compensation.

In determining Wheeler's request for modification was untimely, the ALJ expressly rejected Wheeler's argument that the term "compensation" as used in Section 22 of the Act includes the voluntary payment by an employer of a claimant's medical expenses. The ALJ concluded that Wheeler filed her modification request more than one year after the date on which the Board's denial of her claim became final in 2003 and that her current request was therefore time-barred.

Wheeler appealed the ALJ's decision to the Board. The opinion and order of the Board affirmed the ALJ's denial of

Wheeler's modification request, finding the request was untimely and thus time-barred.

Wheeler filed a timely petition for review of the Board's decision to this Court. We have jurisdiction pursuant to 33 U.S.C. § 921.

B.

This Court reviews the Board's decisions for errors of law and to ascertain whether the Board adhered to its statutorily-mandated standard for reviewing the ALJ's factual findings. *Gilchrist v. Newport News Shipbuilding & Dry Dock Co.*, 135 F.3d 915, 918 (4th Cir. 1998). As to the Board's interpretation of the Act, review is de novo, because the Board is not a policy-making agency and its statutory interpretation is thus not entitled to any special deference from the Court of Appeals. *Id.* at 918.

C.

In pertinent part, Section 22 of the Act provides as follows:

> Upon his own initiative, or upon the application of any party in interest[,] . . . on the ground of a change in conditions or because of a mistake in a determina-tion of fact by the deputy commissioner, the deputy commissioner may, *at any time prior to one year after the date of the last payment of compensation*, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case . . . [and] issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation.

33 U.S.C. § 922 (emphasis added). At issue here is the mean-ing of the term "compensation" in the emphasized portion of

the statute, which effectively sets a statute of limitations for reopening a compensation order. In particular, for resolution of the case at bar, if "compensation" includes the payment of medical benefits, then Wheeler's claim for modification is arguably timely;[4] if it does not, then her claim for benefits was properly denied by the Board as time-barred.

The parties have not identified any court decisions directly addressing whether the term "compensation" within Section 22 of the Act should be interpreted to include "medical payments." In resolving this issue of first impression, we look initially to the language of the Act itself:

> If it is plain, we apply it according to its terms. To determine whether the language is plain, we consider the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. If the language is ambiguous, in that it lends itself to more than one reasonable interpretation, our obligation is to find that interpretation

---

[4]We say Wheeler's claim is only arguably timely because the Employer also argues that even if the term compensation includes "medical benefits," it would only include medical benefits paid directly to the employee and not benefits paid directly to healthcare providers, such as the monies paid here. The Employer relies for this argument on the definition of "compensation" in the Act as "the money allowance payable to an employee or to his dependents," 33 U.S.C. § 902(12), and on the Fifth Circuit's decision in *Lazarus v. Chevron USA, Inc.*, which drew this distinction under Section 18(a) of the Act. 958 F.2d 1297, 1300-01 (5th Cir. 1992)(payments to an employee to reimburse him for medical costs that he had incurred were "compensation" but payments to an employee's health care provider would not constitute "compensation" under that section); *see also Marshall v. Pletz*, 317 U.S. 383, 391 (1943) (noting that "[i]n the normal case . . . the insurer defrays the expense of medical care but does not pay the injured employe[e]" directly and using that as support for the fact that "compensation" in Section 13(a) did not include the payment of medical benefits). Because we conclude herein that compensation in Section 22 does not include payment of medical benefits, we do not reach this issue.

which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and the general purposes that Congress manifested.

*Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245, 248 (4th Cir. 2004) (internal quotations and citations omitted).

The plain language of Section 22, however, does not clearly indicate that "compensation" either includes or excludes medical payments. By contrast, other provisions of the Act, by their text or structure, do clearly reflect that the payment of medical benefits may, or may not, constitute "compensation." *See, e.g.*, *Md. Shipbuilding & Drydock Co. v. Jenkins*, 594 F.2d 404, 406-07 (4th Cir. 1979) ("compensation" in Section 4(a) includes medical benefits because the section requires payment of "compensation payable under sections [7, 8 and 9] of [the] Act"; its explicit reference to Section 7 (which pertains solely to medical services and supplies) means that "compensation" includes medical benefits); *Lazarus v. Chevron USA, Inc.*, 958 F.2d 1297, 1303 (5th Cir. 1992) ("compensation" under Section 18(a) includes medical benefits); *Oilfield Safety & Mach. Specialties, Inc. v. Harman Unlimited, Inc.*, 625 F.2d 1248, 1257 (5th Cir. 1980) ("compensation" under Section 28(a) includes medical benefits); 33 U.S.C. § 906(a) ("[n]o compensation shall be allowed for the first three days of the disability, except the benefits provided for in Section [7] . . .", thereby including medical benefits in compensation).

Additionally, although the Act includes a definition of "compensation," that definition does not expressly state whether the term should be interpreted to include medical benefits. *See* 33 U.S.C. § 902(12) ("'Compensation' means the money allowance payable to an employee or to his dependents as provided for in this chapter, and includes funeral benefits provided therein."). Moreover, the Supreme Court and

this Court have held that the term "compensation" does not include medical benefits in other places in the Act. *See, e.g.*, *Marshall v. Pletz*, 317 U.S. 383, 390-91 (1943) ("compensation" in Section 13, which requires an employee to file a claim for "compensation for disability" within one year after the injury, does not include medical payments); *Brown & Root, Inc. v. Sain*, 162 F.3d 813, 818-19 & n.4 (4th Cir. 1998) ("compensation" in Section 33(g)(1) does not include medical benefits, in light of fact that Section 33(g)(2) refers to "compensation and medical benefits"; the inclusion of "medical benefits" in subsection (2) suggests that its omission in subsection (1) was intentional).

In short, as noted by the Fifth Circuit, the term compensation is not utilized as a "term of art" in the Act. *See Oilfield Safety & Mach. Specialties, Inc.*, 625 F.2d at 1257. Rather, its meaning varies among the statutes within the Act.

In this case, both the ALJ and the Board relied heavily on the Supreme Court's decision in *Pletz*, 317 U.S. 383. (J.A. 199-202 (ALJ decision); J.A. 209-10 (Board decision).) In *Pletz*, the Supreme Court determined that the term "compensation" in Section 13 of the Act did not include "medical aid." 317 U.S. at 390-91. Section 13 requires an employee to file a claim for "compensation for disability" "within one year after the injury, . . . except that if payment of compensation has been made without an award on account of such injury . . . a claim may be filed within one year after the date of the last payment. . . ." *Id.* at 384 n.3 (citing 33 U.S.C. § 913)(ellipses in original).

Because *Pletz* addressed a separate statute with different language, we do not find it controlling. In particular, the provision at issue in *Pletz* specifically referred to "the right to compensation for disability or death." 33 U.S.C. § 913(a). This was an obvious reference to Sections 8 and 9 of the Act (titled "Compensation for disability" and "Compensation for death," respectively). The clear implication of Section 13's

reference to compensation would logically exclude Section 7, which is the provision governing medical benefits and titled "Medical services and supplies." Thus, it is easy to see why the *Pletz* Court did not read Section 13 to encompass the payment of medical benefits as compensation. By contrast, Section 22 does not make reference to disability or death as does Section 13. Thus, we find *Pletz* distinguishable and not controlling precedent. Moreover, as already noted, there are other provisions in the Act where the term "compensation" clearly does include medical benefits. *See Jenkins*, 594 F.2d at 406-07 ("compensation" in Section 4(a) includes medical benefits).

While we do not find *Pletz* controlling, it is instructive. One particular reason that is so is that Section 13 and Section 22 both establish statutes of limitation for filing compensation claims under the Act and use similar language. Section 13 allows a claim to be "filed within one year after the date of the last payment" and earlier in the same sentence refers to "payment of compensation." Similarly, Section 22 allows modifications and review of an award of compensation "at any time prior to one year after the date of the last payment of compensation." Thus, although there are differences, there are also similarities in the language of the two sections that counsel careful consideration of the reasoning of *Pletz* as we analyze Section 22.

In view of the lack of any controlling precedent and the lack of the clear inclusion or exclusion of medical benefits as part of compensation in either the definition of "compensation" or the text and structure of Section 22, we conclude that the meaning of "compensation" in Section 22 is ambiguous. Accordingly, we must find the "interpretation . . . most fairly . . . imbedded in the statute, in the sense of being most harmonious with its scheme and the general purposes that Congress manifested." *Brown*, 376 F.3d at 248 (citations omitted).

D.

As explained by this Court in *Brown*,

> [t]he LHWCA is a no-fault workers compensation scheme that provides "employees with the benefit of a more certain recovery for work-related harms" while providing "employers with definite and lower limits on potential liability than would have been applicable in common-law tort actions for damages. The LHWCA is thus designed to accommodate "employees' interest in receiving a prompt and certain recovery for their industrial injuries as well as . . . the employers' interest in having their contingent liabilities identified as precisely and as early as possible.

376 F.3d at 249-50 (citations omitted).

The Director and Wheeler describe Section 22 as this Court did in *Betty B Coal Co. v. Director, OWCP*, by referring to the modification procedure in Section 22 as "extraordinarily broad" and "flexible, potent, easily invoked, and intended to secure 'justice under the act.'" 194 F.3d 491, 497-98 (4th Cir. 1999); *see also O'Keeffe v. Aerojet-General Shipyards, Inc.*, 404 U.S. 254, 255-56 (1971) (Section 22 allows modification of an earlier compensation order "when changed conditions . . . make[ ] such modification desirable in order to render justice under the act.").

Wheeler's focus on the general purpose of Section 22 as a whole, however, ignores the reality that the provision also contains a statute of limitations. That is, both the Section 22 time bar and the initial one-year period for filing claims, *see* 33 U.S.C. § 913, are obviously limitations on the right of a party to seek redress under the Act, even in cases where there may be a meritorious claim. Indeed, a statute of limitations, by its very nature, may result in the denial of otherwise meri-

torious claims. *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 747 (4th Cir. 1990)("statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims")(quoting *United States v. Kubrick*, 444 U.S. 111, 125 (1979)). But statutes of limitations "serve important, well-established purposes affirmed throughout our jurisprudence. We are bound to give them effect until such time as the creator of such provisions, the legislative branch, exercises its prerogative to amend the statute." *Gould*, 905 F.2d at 747.

Thus, we must interpret Section 22 in a way so as to maintain the provision's "extraordinarily broad" modification procedure, *Betty B Coal Co.*, 194 F.3d at 497, while still giving effect to the one-year limitations period it contains.

Notably, the legislative history of Section 22 reflects Congress's attempt to strike such a balance, and also supports the conclusion that "compensation" in Section 22 does not include payment of medical benefits. As originally enacted, Section 22 permitted the modification of a prior order of compensation only "during the term of an award." *See Intercounty Constr. Corp. v. Walter*, 422 U.S. 1, 8 (1975) (citation omitted). Courts construed this provision to limit the power to modify a previous order to the "period of payments pursuant to an award." *Id.* at 8-9. Because employers often paid benefits voluntarily and completed making payments before a final compensation order was entered, claimants were frequently left unable to seek additional compensation because the "term of the award" had expired with the last payment of compensation and that occurred long before they received an order. *See Intercounty Constr. Corp. v. Walter*, 500 F.2d 815, 818 (D.C. Cir. 1974), *aff'd* 422 U.S. 1 (1975).

In an attempt to remedy this situation, the United States Employees' Compensation Commission ("USECC"), which then administered the Act, recommended that Congress amend Section 22 to permit continuing review and modifica-

tion of previously entered orders. *Walter*, 422 U.S. at 9. The purpose of the USECC recommendation was to "broaden[] the length of time during which the deputy commissioner could exercise his power to modify previously entered orders." *Id.*

As recounted by the Supreme Court in *Walter*, Congress responded in 1934 by amending Section 22 and explained the change as follows:

> [This bill] amends section 22 of the existing act so as to broaden the grounds on which a deputy commissioner can modify an award and also ***while strictly limiting the period,*** extends the time within which such modification may be made. . . .

> The amendment is in line with the recommendation of the [USECC] except that it limits to 1 year after the date of the last payment of compensation the time during which such modification may be made.

*Walter*, 422 U.S. at 10 (emphasis added) (alterations in original) (quoting S. Rep. No. 558, 73d Cong., 2d Sess., 3-4 (1934); H.R. Rep. No. 1244, 73d Cong., 2d Sess., 4 (1934)).

Thus, Congress explicitly rejected the recommendation that modification be permitted with no time limitation, instead restricting modifications to a one-year time period after certain events. *See id.* This legislative history further shows that Congress's inclusion of the one-year limitations period was not accidental, and bolsters the conclusion that the Section 22 limitations period must not be construed in a way that strips it of much of its force.

The Director argues that the legislative history does not support a strict construction of any portion of Section 22. He points to the Supreme Court's decision in *Metropolitan Steve-*

*dore Co. v. Rambo*, 515 U.S. 291 (1995) ("*Rambo I*"), in which the Supreme Court stated that Congress's "unwilling-[ness] to extend the 1-year limitations period in which a party may seek modification" should not lead courts to

> infer that Congress intended a narrow construction of other parts of § 22, including the circumstances that would justify reopening an award. We rejected this very argument in *Banks [v. Chicago Grain Trimmers Ass'n, Inc.*, 390 U.S. 459, 465 (1968)], and its logic continues to elude us. Congress' decision to maintain a 1-year limitations period has no apparent relevance to which changed conditions may justify modifying an award.

515 U.S. at 298-99.

Unlike the *Rambo I* and *Banks* courts, however, we are not tasked with interpreting a different portion of Section 22, but with interpreting the statute of limitations itself and what events trigger it. *Cf. Rambo I*, 515 U.S. at 293 (addressing which conditions justify modification); *Banks*, 390 U.S. at 465 (suggesting that the legislative history might be relevant to "the time period in which review was to be available," but the history did not address the "grounds for review.").

Moreover, the interpretation urged by Wheeler and the Director would, for all practical purposes, allow the statute of limitations to be extended indefinitely, because each time any medical treatment in some way related to a covered injury was sought and paid, it would trigger the running of the one-year period anew.[5] For example, a claimant could seek follow-up medical treatment for an injury at any time, and by

---

[5]As pointed out by the Employer, the Director's interpretation might also have the unintended consequence of employers being hesitant to promptly pay claims for medical expenses, knowing that doing so would extend for another year any request for modification of compensation.

doing so, re-open the period for modification of monetary benefits. Holding as urged by the Director and Wheeler here, therefore, would effectively create by judicial act the rule Congress explicitly refused to adopt, that of a very broad — if not unlimited — time period in which claims for modification could be brought.

We also conclude that the purposes of Section 7 of the Act are best respected by our interpretation of "compensation" as excluding medical payments. That is, the word "compensation" appears ten other times in Section 22, in addition to the phrase "after the date of the last payment of compensation," which we interpret here. For example, the Section allows for review of a "compensation case" and allows modification of any "compensation order." 33 U.S.C. § 922. Following the basic canon of statutory construction that a term used more than once within the same provision should be given an identical meaning, if possible, *see, e.g. Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992) (identical terms within an Act are presumed to bear the same meaning), we should give the term "compensation" the same meaning in every place in Section 22.

If we interpret "compensation" as including medical benefits in every other place the term appears in Section 22, however, then Section 22 would seem to allow restrictions on medical benefits that are not envisioned by Section 7. For example, if medical benefits were part of the term compensation throughout Section 22, then the provision would allow the commissioner or deputy commissioner to "review a [medical benefits] case . . . [and] issue a new [medical benefits] order which may terminate, continue, reinstate, increase, or decrease such [medical benefits] or award [medical benefits]." Such a reading appears contrary to Section 7, which requires an employer to furnish or pay for medical services and supplies "for such period as the nature of the injury or the process of recovery may require." That is, Section 7 does not contain any time restrictions on the furnishing of (or payment of)

medical services. Interpreting Section 22 as the Director urges, however, particularly if we were to interpret compensation consistently throughout that provision, would seem to place a limitation on the payment of medical benefits in direct conflict with Section 7.

Such a reading would also conflict with the Supreme Court's pronouncement in *Pletz*, that the time limitations for bringing an initial claim for compensation do not apply to claims for medical services. *See* 317 U.S. at 390-91.

For all of the foregoing reasons, we conclude that interpreting "payment of compensation" in Section 22 to exclude an employer's payment of medical benefits is most harmonious with the purpose of both the statute's limitations period and the Act as a whole.

Wheeler and the Director contend, however, that such a reading of Section 22, *i.e.*, one that excludes the payment of medical benefits from compensation, will mean that whenever a claimant is not receiving a disability award, and then has previous workplace injuries that worsen to the point of requiring additional medical care, she is not entitled to seek disability benefits if it has been more than one year since she last received disability benefits (or since such benefits were rejected). However, this Court has enforced the Section 22 limitations period in other cases, even though it resulted in a decision adverse to a claimant. *See, e.g.*, *House v. S. Stevedoring Co.*, 703 F.2d 87, 89 (4th Cir. 1983) (rejecting claimant's suggestion that his request for modification should be deemed timely filed because it was filed within one year of the time the last payment of compensation would have been made had the award been paid out in installments instead of in a lump sum because Section 22 required that the modification claim be filed within one year of the last payment, not when it would have been paid had the payment been structured differently). Even in *Betty B Coal Co.*, which recognized the broad and generous scope of the modification remedy, there was no

suggestion that the one-year limitations period could simply be ignored. *See* 194 F.3d at 499 (referring to the earlier decision of *Lisa Lee Mines v. Director, OWCP*, 86 F.3d 1358, 1360, 1364 (4th Cir. 1996) (en banc) wherein this Court recognized that a claimant who wanted to "be a perpetual litigator" could simply file repeated requests for "modification" the day before a year runs from the prior denial).

Moreover, as noted above, it is the nature of limitations periods to sometimes work seemingly harsh results. *Gould*, 905 F.2d at 747. As the Supreme Court explained in interpreting the limitations period in Section 13 of the Act,

> [w]e are aware that this is a humanitarian act, and that it should be construed liberally to effectuate its purposes; but that does not give us the power to rewrite the statute of limitations at will, and make what was intended to be a limitation no limitation at all . . . . While it might be desirable for the statute to provide as [Wheeler] contend[s], the power to change the statute is with Congress, not us.

*Pillsbury v. United Eng'g Co.*, 342 U.S. 197, 200 (1952) (cited in *Newport News Shipbuilding & Dry Dock Co. v. Parker*, 935 F.2d 20, 24 (4th Cir. 1991)).

Applying the same reasoning here, this Court cannot interpret Section 22 solely to ensure "justice under the Act" by effectively writing the limitations period out of the statute. As we have discussed above, the reading urged by the Director would allow avoidance of the statute of limitations in Section 22 merely through the claimant seeking medical treatment, even years after the injury and years after disability compensation and compensation proceedings had ceased. Such a reading strips the limitation period of nearly all meaning and is not consistent with the Congressional intent. *See id.*[6]

---

[6]The Director also relies heavily on *Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121 (1997) ("*Rambo II*"). The Director contends the

E.

Because our conclusion is contrary to the interpretation urged by the Director, we also explain briefly why we do not defer to the Director proffered view. This Court has previously held that the Director's "interpretation of the Act in its briefs is entitled to some deference." *Newport News Shipbuilding & Dry Dock Co. v. Riley*, 262 F.3d 227, 231 (4th Cir. 2001); *see also Newport News Shipbuilding & Dry Dock Co. v. Director, OWCP*, 315 F.3d 286, 294 n.8 (4th Cir. 2002) (where Director had "consistently maintained" the same position since an earlier court decision, the position was not merely a litigating position and was entitled to deference). *But see Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212-13 (1988) (no deference is due to the Director's interpretation where it appears to be merely a litigating position, and is not based on or supported "by regulations, rulings, or administrative practice").

*Skidmore v. Swift & Co.* instructs that the level of deference owed to an agency's interpretation of an act it is tasked with administering depends upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. 134, 140 (1944).

---

Supreme Court's willingness to allow a "nominal award" procedure in *Rambo II*, where the claimant had only a potential disability, means that the Supreme Court "would give an equally liberal interpretation" to compensation in Section 22 to ensure that Wheeler is not denied compensation for her actual work-related disability. Conversely, the majority's holding in *Rambo II* requires that something be timely done by the claimant in order to keep open the possibility of future disability payments in the event of a worsening medical condition. This would appear to bolster the Employer's position here. In any event, because we do not find *Rambo II* to significantly aid our decision here, we do not discuss it further.

The Director candidly admits that he has never before taken a formal position on the issue before us, but asserts that is because the issue has never arisen. (Supp. Brief for Fed. Resp. at 6-7). Nonetheless, the Director argues that his position here is thorough in its consideration of the issue, employs valid reasoning, and is consistent with his position on related issues in previous litigation. Finally, the Director asserts there is "'no reason to suspect' that [his] interpretation of section 22 'does not reflect the agency's fair and considered judgment on the matter in question.'" (*Id.* (citing *Newport News Shipbuilding & Dry Dock Co.*, 315 F.3d at 294 n.8).)

As to the "consistency" factor, it is difficult to gauge whether the Director's position here is consistent, since he freely admits that he has never taken a position on this precise issue before. Further, the Director does not point us to any "regulations, rulings or administrative practice" to support his viewpoint. It seems just as valid a conclusion that the Director's argument is a new litigating position as he can adduce no evidence of an agency position despite Section 22's place in the Act for decades.

While we do not doubt that the Director has been thorough in considering the issue, we do not find his reasoning convincing. In particular, as discussed above, we believe that the Director's interpretation of Section 22 greatly undermines the effect of the limitations period in that statute and is inconsistent with the intent of Congress as the legislative history illustrates. Additionally, the Director's reading of "compensation" to include medical benefits in Section 22 renders that provision potentially inconsistent with both Section 7 and the Supreme Court's interpretation of Section 13 in *Pletz*. Section 7 makes clear that medical benefits are not subject to any statute of limitations, but must be paid at any time if related to the injury. Similarly, *Pletz* makes clear that claims for medical benefits are not subject to the limitations period in Section 13 of the Act, which governs the filing of initial claims for benefits.

Because we find the Director's reasoning flawed, therefore, and his position unpersuasive, we do not defer to the Director's position. *See Ball v. Memphis Bar-B-Q Co.*, 228 F.3d 360, 365 (4th Cir. 2000) (declining to defer to an agency's position taken in a brief where it was not persuasive, because it is "entitled to respect only to the extent that [it has] the power to persuade") (citations and internal quotations omitted); *Weyher/Livsey Constructors, Inc. v. Prevetire*, 27 F.3d 985, 988 (4th Cir. 1994) (declining to defer to the Director's interpretation of the LHWCA where it is "both unreasonable and contrary to Congress' clear intent, as expressed in the Act's text and structure" and noting that the court's "duty is to enforce the will of Congress, notwithstanding the Director's interpretation").

### III.

For the reasons set forth above, we conclude that the term "compensation" in 33 U.S.C. § 922 does not include voluntary payments by an employer for medical services provided to an employee. As such, the payments of such services do not extend the Section 22 limitations period. Because Wheeler did not file her request for modification within the one year period set forth in Section 22, it is time-barred. Accordingly, we find no error in the decision of the Board. The decision of the Board is therefore

*AFFIRMED*.