IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 91-3382

---

ANDRE P. LAZARUS,

                                        Plaintiff-Appellant,

                        versus

CHEVRON USA, INC.,

                                        Defendant-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

(April 13, 1992)

Before REAVLEY, JOLLY, and HIGGINBOTHAM, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Andre Lazarus appeals the district court's dismissal of his petition for enforcement of a supplementary order issued by a deputy commissioner of the Department of Labor. He argues that the district court erred in finding that medical benefits are not included in compensation for the purposes of enforcement proceedings under § 18(a) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 918(a). We find that compensation under § 18(a) does include medical benefits and that the district court erred in dismissing Lazarus' petition for this reason. We affirm the district court's decision, however, because the underlying compensation order was not a final and enforceable order.

I.

In January of 1986, Lazarus was a petroleum engineer employed by Chevron USA, Inc.. While working on one of Chevron's oil rigs off the coast of Louisiana, he slipped and fell and injured his back. Doctors diagnosed Lazarus' injury as a lower back strain and prescribed a program of physical therapy, exercise, and medication. Chevron paid Lazarus disability compensation and medical benefits while he was recuperating. Lazarus returned to work briefly in June of 1986, but later that month sought treatment for depression, and entered a psychiatric hospital. He remained in the hospital for a month, and then continued to receive treatment on an outpatient basis thereafter. Lazarus asked Chevron to reinstate his workers' compensation benefits, but Chevron refused, asserting that Lazarus' psychiatric condition was unrelated to the back injury he had sustained on the rig. In August of 1986, Lazarus was laid off in a reduction in force.

Lazarus remained unemployed thereafter. He continued to complain of back pain and depression in the ensuing months and continued to visit doctors sporadically for treatment. In July of 1988, he was admitted to the River Oaks Hospital for treatment of severe depression. He remained in residence at River Oaks for about a year and a half. He filed a claim against Chevron with the deputy commissioner of the Department of Labor, asserting his right to workers' compensation benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 907, 914. The deputy commissioner investigated the claim and found that Lazarus'

2

psychiatric treatment was unrelated to the injury he sustained to his back. Lazarus disputed this conclusion and asked for a hearing before an administrative law judge. In September of 1989, an ALJ found that Lazarus' psychological condition was causally related to his back injury, and accordingly ordered Chevron to pay all unpaid workers' compensation benefits dating back to January 1986. The award included disability compensation based on an average weekly wage of $ 817.67, all medical expenses related to the injury that were previously incurred, and such reasonable and necessary future medical care as Lazarus' disability required.

Chevron immediately reinstated the payment of Lazarus' disability compensation and paid all past disability benefits that were due. It did not pay any of Lazarus' medical bills, however. Chevron appealed the ALJ's decision to the Benefits Review Board. While this appeal remained pending, Lazarus applied to the deputy commissioner for a supplementary order under § 18(a) of the Act, arguing that Chevron was in default because it had not paid any of his medical expenses as required by the ALJ's order. Chevron requested an informal conference to contest the amount Lazarus claimed was in default and the reasonableness of his medical bills. The deputy commissioner did not respond to Chevron's request for an informal conference, but issued a supplementary order declaring Chevron in default on more than $ 300,000 of medical benefits.

Lazarus petitioned for enforcement of this supplementary order in the district court. Chevron moved to dismiss the petition, arguing that § 18(a) provides for immediate enforcement only of

3

compensation awards, not awards of medical benefits. Chevron also urged that the amounts Lazarus claimed were in default were not due under the ALJ's order, and that the deputy commissioner erred in denying its request for a hearing on this matter. The district court found that the deputy commissioner's order to pay medical expenses was not in accordance with law because the word "compensation " as used in § 18(a) does not include medical benefits. It therefore dismissed Lazarus' petition for enforcement. Lazarus appeals.

II.

The Longshore and Harbor Workers' Compensation Act has two provisions by which a district court can enforce compensation awards. First, under § 21(d), the district court may enforce a compensation order that has become final, if it determines that the order was made and served in accordance with law. 33 U.S.C. § 921(d). A compensation order becomes final thirty days after it is filed in the office of the deputy commissioner, or, in the event a party appeals the order to the Benefits Review Board, when the Board makes a decision which resolves the merits of the administrative proceeding. 33 U.S.C. §§ 921(a); Newpark Shipbuilding & Repair, Inc. v. Roundtree, 723 F.2d 399, 400 (5th Cir. 1984). Second, under § 18(a), the district court may enforce a supplementary order issued by the deputy commissioner to an employer who has been in default for more than thirty days in the payment of compensation due and payable under any award of compensation. 33 U.S.C. § 918(a). Compensation is due and payable

4

when a compensation order is filed in the office of the deputy commissioner. 33 U.S.C. § 921(a); <u>Tidelands Marine Serv. v. Patterson</u>, 719 F.2d 126, 127 n.1 (5th Cir. 1983). A supplementary order under § 18(a) is final when entered and is immediately enforceable by the district court if it is in accordance with law. <u>Abbott v. Louisiana Insurance Guaranty Ass'n</u>, 889 F.2d 626, 629 (5th Cir. 1989).

These two provisions are the sole means of enforcing compensation awards under the Act. 33 U.S.C. § 921(e); <u>Henry v. Gentry Plumbing & Heating Co.</u>, 704 F.2d 863, 864 n.1 (5th Cir. 1983). Whereas § 21(d) provides for enforcement of an appealed order only after the appeal is finally resolved by the Board, § 18(a) allows a claimant who has obtained an award at the ALJ level to enforce that award promptly via a supplementary order, despite the possibility that the award may be overturned on review. This section is expressly designed to provide "a quick and inexpensive mechanism for prompt enforcement of unpaid compensation awards, a theme central to the spirit, intent, and purposes of the LHWCA." <u>Tidelands</u>, 719 F.2d at 129; <u>see also</u> <u>Providence Washington Insurance Co. v. Director, Office of Workers' Compensation Programs</u>, 765 F.2d 1381, 1385 (9th Cir. 1985). The Board is authorized to grant a stay of enforcement pending appeal under § 21(b)(3), but no stay will issue unless irreparable injury would otherwise ensue to the employer or carrier. 33 U.S.C. § 921(b)(3). Congress has made a policy choice that in most circumstances, "it is preferable that an injured worker receive regular compensation,

5

even that later is determined to have been wrongly exacted and not recoverable by the payer, than that he be left without assistance until all amounts are finally determined." Henry, 704 F.2d at 865.

The question we must decide is whether medical benefits are included in "compensation" for the purposes of the accelerated enforcement procedure under § 18(a). "Compensation" is defined in § 2 of the Act as "the money allowance payable to an employee or to his dependents as provided for in this chapter. . . ." 33 U.S.C. § 902(12). We must construe this definition liberally in favor of injured workers. Holcomb v. Robert W. Kirk & Associates, Inc., 655 F.2d 589, 592 (5th Cir. 1981). Medical benefits can constitute monies payable to an employee or his dependents. Under § 7 of the Act, an employee is entitled to recover any amount expended by him for medical or other treatment if the employer refuses or neglects a request to furnish such treatment, or if the nature of the employee's injury requires treatment and the employer neglects to authorize treatment despite knowledge of the injury. 33 U.S.C. § 907(d). We are persuaded that an award obtained by an employee under these circumstances is an award of compensation as defined in § 2.

The structure of the Act supports this interpretation. Section 4(a) is entitled "liability for compensation" and states that "[e]very employer shall be liable for and secure the payment to his employees of the compensation payable under sections 907, 908, and 909 of this title." 33 U.S.C. § 904(a). These three sections cover the three kinds of benefits to which an employee may

6

be entitled: medical services and supplies (§ 7), compensation for disability (§ 8), and compensation for death (§ 9). Since § 7 deals exclusively with the provision of medical services and supplies, and § 4 refers to the "compensation" payable under § 7, Congress must have intended the term "compensation" to encompass the provision of medical benefits, at least in some circumstances. See Oilfield Safety & Machine Specialties, Inc. v. Harman Unlimited, Inc., 625 F.2d 1248, 1257 (5th Cir. 1980). Section 6(a) also refers to § 7 benefits as compensation. 33 U.S.C. § 906(a).

Chevron observes that there are numerous other sections in the Act which appear to contrast the provision of medical benefits with the payment of compensation. For example, § 18(b) provides that in cases where an employer is for some reason unable to pay, the Secretary of Labor will pay awards from a special fund established for this purpose, "and, in addition, provide any necessary medical, surgical, and other treatment required by section 907 . . . ." 33 U.S.C. § 918(b). Similarly, § 33, which deals with settlements with third parties, states that if no written approval of the settlement is obtained, or if the employee fails to notify the employer of any settlement, "all rights to compensation and medical benefits under this chapter shall be terminated . . . ." 33 U.S.C. § 933(g). Indeed, in Chevron's view, the very fact that medical benefits and disability compensation are treated in separate sections indicates that the two are mutually exclusive categories.

We disagree. The separate treatment of medical care and compensation that runs throughout the Act is readily explained.

7

Whereas death and disability benefits generally come in the form of monetary compensation from employer to employee, § 7 indicates that Congress envisioned that employers would provide medical care in kind. The provision states that "[t]he employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus, for such period as the nature of the injury or the process of recovery may require." 33 U.S.C. § 907(a). Originally, the employer or its carrier would select the health care provider and pay the medical expenses incurred in treating the employee directly to that provider. See Marshall v. Pletz, 317 U.S. 383, 391 (1943) ("In the normal case . . . the insurer defrays the expense of medical care but does not pay the injured employee anything on account of such care."). Monetary payments to employees for medical expenses were necessary, however, in cases where the employer refused to provide medical care and the employee had to obtain it himself and file a claim against the employer. Id.

Congress changed this procedure somewhat in 1960 because employees complained that they should be able to select their own doctors. See H. Rep. No. 2187, 86th Cong., 2d Sess., reprinted in 1960 U.S. Code Cong & Admin. News 3556, 3556. It provided a mechanism whereby employees would be allowed to select their own doctors from a panel of physicians named by the employer and approved by the deputy commissioner. Pub. L. No. 86-756, 74 Stat. 899, reprinted in 1960 U.S. Code Cong & Admin. News 1269, 1269-71. In 1972, the procedure was further liberalized, allowing the

8

employee to choose any doctor authorized by the Secretary to render medical care under the Act. Pub. L. No. 92-576, 86 Stat. 1251, reprinted in 1972 U.S. Code Cong. & Admin. News 1452, 1456-57; H. Rep. No. 92-1441, 92nd Cong., 2d Sess., reprinted in 1972 U.S. Code Cong. & Admin. News 4698, 4713-14. Thus employers no longer choose health care providers to treat their employee's work-related injuries. Instead, injured employees ask their employers to authorize medical treatment by the doctors they select. See id..

Nevertheless, the employer's obligation to furnish medical services in kind remains unchanged. 33 U.S.C. § 907(a). As we understand the current practice, employers remain directly liable to health care providers for the medical expenses of their injured workers when they consent to the provision of medical care. If an employer refuses or neglects to provide or authorize medical care, however, the employee must procure medical services independently and then file a claim with the Secretary to recover his expenses. 33 U.S.C. § 907(d).

The distinction between providing medical services in kind and paying employees for expenses incurred in obtaining such services themselves is important to our inquiry here. If an employer furnishes medical services voluntarily, by paying a health care provider for its services, it does not pay "compensation" within the meaning of the Act. Compensation includes only money payable to an employee or his dependents, 33 U.S.C. § 902(12), not payments to health care providers on an employee's behalf. If, however, the employer refuses or neglects to furnish medical services, and the

9

employee incurs expense or debt in obtaining such services, an award of medical expenses obtained by the employee in a suit against the employer is "compensation" within the meaning of § 2. It is money payable to the employee.

Chevron's reliance on Marshall v. Pletz, supra, is therefore misplaced. In Pletz, the Court held that the furnishing of medical care to an employee was not payment of compensation within the meaning of § 13(a) of the Act. The Court did not say that money paid to the employee for debts incurred in obtaining medical care could not constitute compensation. Indeed, it implied that an award reimbursing an employee for money spent to obtain medical care arguably does qualify as compensation.

Those cases in which this court and others have held that an award of attorney's fees is not "compensation" within the meaning of the Act, see, e.g., Guidry v. Booker Drilling Co., 901 F.2d 485, 487 (5th Cir. 1990); Thompson v. Potashnick Construction Co., 812 F.2d 574, 576 (9th Cir. 1987), are also inapposite here. First, § 28(a) expressly provides that an award of attorney's fees "shall be paid directly by the employer or carrier to the attorney for the claimant." 33 U.S.C. § 928(a). Since the fees are not payable to the employee, they cannot constitute compensation within the plain meaning of § 2. Furthermore, unlike the case of medical benefits, there are no statutory provisions in the Act which refer to attorney's fees as compensation to the employee.

Of course, there are some sections in the Act in which it is clear that Congress used the term "compensation" to refer to

10

disability benefits.  See, e.g.,  33 U.S.C. § 910 ("the average weekly wage of the injured employee shall be taken as the basis upon which to compute compensation").  This does not mean that compensation cannot also be used to refer to an award of medical benefits.  The same word can be used to describe different kinds of benefits that fall within the Act's broad definition of compensation as "the money allowance payable to an employee."

The only provision in the Act that we have discovered which appears to contradict our interpretation of "compensation" is § 7(c)(1)(B)(i), 33 U.S.C. § 907(c)(1)(B)(i).  This section states that a health care provider may be disqualified from providing medical care under the Act if it makes false statements "in a claim for compensation or claim for reimbursement of medical expenses." This seems to indicate that reimbursing an employee for medical expenses is something different from "compensation" as the Act defines it.  However, this provision was added to the Act in 1984. See P.L. No. 98-426, 98 Stat. 1639, 1642; H. Rep. No. 98-570, 98th Cong., 2d Sess., reprinted in 1984 U.S. Code Cong. & Admin. News 2734, 2745-46.  We therefore accord it less weight in determining the original meaning of "compensation" when Congress enacted the statute in 1927.

The Longshore and Harbor Workers' Compensation Act "'must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results.'"  Director, Office of Workers' Compensation Programs v. Perini North River Associates, 459 U.S. 297, 316-17 (1983) (citations omitted).  Interpreting the

11

term "compensation" in § 18(a) as including medical benefits fulfills the purpose of the Act and avoids an incongruous result. As we have noted, Congress included § 18(a) in the Act so that a disabled worker could receive benefits promptly after being found deserving of them, rather than suffer hardship while the benefits were appealed. See Rivere v. Offshore Painting Contractors, 872 F.2d 1187, 1190 (5th Cir. 1989); Tidelands, 719 F.2d at 129; Henry, 704 F.2d at 865. It did not intend for the administrative review process added in the 1972 amendments to the Act to frustrate this goal. See H. Rep. No. 92-1441, 92nd Cong., 2d Sess., reprinted in 1972 U.S. Code Cong. & Admin. News 4698, 4709. We see no reason why Congress would have provided for immediate enforcement of awards of disability benefits but not awards of medical benefits. The financial burden that medical costs impose on an injured employee is just as debilitating as the loss of income resulting from the employee's inability to work. Indeed, the provision in § 21 limiting the availability of stays pending appeal to the Board states that "[t]he payment of amounts required by an award shall not be stayed pending final decision . . . unless ordered by the Board." 33 U.S.C. § 921(b)(3). This language indicates that Congress intended any "amount required by an award" to be payable pending appeal, whether it be disability benefits or medical expenses or both.

Chevron argues that a delay in payment of medical expenses has imposed no hardship on Lazarus, since he received medical care from River Oaks without paying anything. This argument ignores the fact

12

that Lazarus is personally liable for his medical bills. The fact that River Oaks has not yet attempted to collect from Lazarus is a fortuity. Furthermore, if awards of medical benefits were not promptly enforceable, there would be a substantial chilling effect on the provision of medical services to injured employees whose ability to pay is dubious. Many health care providers would be reluctant to provide treatment without some indication that payment will soon be forthcoming. This would detract from the prompt relief of injured workers that Congress intended.

Finally, if the term "compensation" does not include medical benefits in any instance, there is a strong argument that administrative awards of medical benefits under the Act are never judicially enforceable, before or after appeal. Section 21 contains the only other enforcement mechanism in the Act other than § 18. It is entitled "review of compensation orders" and provides for judicial enforcement of a "compensation order making an award." 33 U.S.C. § 921(d). If medical benefits cannot constitute "compensation," they arguably cannot be part of a "compensation order" enforceable under this section. This cannot have been the intent of Congress.

In sum, we are persuaded that medical benefits are included in "compensation" for the purposes of enforcement proceedings under § 18(a). The district court erred in refusing to enforce the deputy commissioner's order to Chevron to pay Lazarus' medical expenses for this reason.

13

III.

Chevron also argues that the district court properly refused to enforce the deputy commissioner's supplementary order because it was not "in accordance with law" as required by § 18(a). It contends, inter alia, that the ALJ's underlying order was not a final enforceable order because it did not adequately state the amount of compensation which was owed to Lazarus.

Neither the deputy commissioner nor the district court should review the underlying merits of the ALJ's decision and order in the course of § 18(a) enforcement proceedings. Abbott, 889 F.2d at 629-30; Jourdan v. Equitable Equipment Co., 889 F.2d 637, 639-40 (5th Cir. 1989). This would undermine the prompt relief of injured employees which this section was designed to facilitate. But we have explained that a compensation order which is not final is not "in accordance with law" and is therefore not enforceable by resort to § 18(a). Severin v. Exxon Corp., 910 F.2d 286, 289 (5th Cir. 1990). "To constitute a final decision and order of the ALJ, the order must at a minimum specify the amount of compensation due or provide a means of calculating the correct amount without resort to extra-record facts which are potentially subject to dispute between the parties." Id.

The portion of the ALJ's order in this case relating to medical benefits falls afoul of the rule set forth in Severin. The order provided that Chevron shall furnish "such reasonable and necessary future medical care and treatment as Claimant's work-related injury of January 28, 1986, may require, and shall pay for

14

all medical expenses related thereto previously incurred." The ALJ added that "[t]he specific dollar computations of the compensation award shall be administratively performed by the Deputy Commissioner." He never specified the amount of compensation due, nor did he provide a means of calculating this amount. He did not say what expenses were related to the injury and did not refer to Lazarus' medical bills as providing the basis for its award. We do not know for sure whether the ALJ even reviewed Lazarus' medical bills. The ALJ must not delegate the task of calculating the amount of the award to the deputy commissioner unless it provides some method of doing so.[1]

Lazarus argues that Chevron waived any arguments it may have had as to the reasonableness of his medical expenses because it did not raise this issue before the ALJ. We agree that the reasonableness of Lazarus' medical expenses is a substantive matter that should have been resolved at the initial ALJ hearing, and that Chevron cannot raise this issue in the course of enforcement proceedings. Jourdan, 889 F.2d at 640. However, this does not relieve the ALJ of his responsibility to prescribe the amount of its award, or to establish some means of deriving this amount.

The problem with the ALJ's indeterminate award was compounded by the deputy commissioner's failure to provide Chevron with a

---

[1]    Technically, the award of future benefits was not an award of "compensation" under § 18(a), since the ALJ ordered Chevron to furnish medical services rather than pay medical expenses. To make the enforceability of such orders clear, ALJs should characterize their awards as compensation for medical expenses the employee will incur, and describe the expenses that will qualify.

15

hearing on this matter. Chevron asked for an informal conference, which the Secretary has provided for by regulation as a means of resolving disputes over claims without resort to the formal hearing process. See 20 C.F.R. §§ 702.372, 702.311 et seq. It argued not only that the medical bills were unreasonable, but also that not all of the expenses claimed by Lazarus were in fact due under the ALJ's award. The latter issue is one properly resolved by the deputy commissioner at an informal conference or, if necessary, at a formal hearing. See Abbott, 889 F.2d at 629; Jourdan, 889 F.2d at 639. Instead of convening such proceedings, the deputy commissioner simply accepted the figure that Lazarus asserted was in default, without explanation. She does not appear to have made the "specific dollar computations" contemplated by the ALJ when he delegated the determination of the amount of the award to the deputy commissioner. Thus we are left with the possibility that neither the ALJ nor the deputy commissioner actually calculated the amount of money Chevron owed.

We are reluctant to extend Lazarus' road to recovery further, but we cannot ignore the potential prejudice to Chevron in the proceedings below. Because the ALJ's award was not a final order enforceable under § 18(a), the district court was entitled to dismiss Lazarus' petition. We therefore affirm the district court's decision on grounds independent of those stated by the court. Cf. United Brands Co. v. Melson, 594 F.2d 1068, 1072 (5th Cir. 1979). When the ALJ makes express findings as to the amount

16

of the award and the kind of expenses for which Chevron is liable, its order will be enforceable under § 18(a).

AFFIRMED.