James W. BARKER, Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR, et al., Respondents.

No. 97–1450.

United States Court of Appeals, First Circuit.

Heard Feb. 2, 1998.

Decided March 11, 1998.

---

Gary A. Gabree, with whom Stinson, Lupton, Weiss & Gabree, P.A., Bath, ME, was on brief, for petitioner.

Stephen Hessert, with whom Norman, Hanson & DeTroy, Portland, ME, was on brief, for respondent Bath Iron Works Corporation.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

SELYA, Circuit Judge.

After sustaining an injury in the course of his employment as a mechanic for respondent Bath Iron Works Corporation and receiving temporary disability benefits, petitioner James W. Barker filed a claim for a supplemental scheduled award under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1986) (LHWCA or the Act). An Administrative Law Judge (ALJ) concluded that the asserted disability resulted from an unscheduled injury and denied both Barker's claim and his request for attorneys' fees. The Benefits Review Board (Board) affirmed in all respects. The petitioner asks us to instruct the Board in the error of its ways. Exercising our statutory jurisdiction to review final orders of the Board, *see id.* § 921(c), we deny the petition in its entirety.

## I.

### Background

We limn the facts as found below, consistent with record support.[1]

While at work on December 14, 1989, the petitioner experienced cervical pain that radiated down through his left shoulder and arm. The petitioner proceeded under Maine's workers' compensation law, and received temporary disability payments for the period during which he was unable to work. He also received an award for whole-body permanent impairment (11%) under the state statute. *See* 39 Me.Rev.Stat. Ann. § 56–B (1987) (later repealed).

The petitioner eventually returned to work as a technical planner—a less strenuous position, but one for which he receives higher pay and better benefits. Nevertheless, his symptoms persisted. After more than three years of treatment, doctors attributed his enduring symptomatology (including radiculopathy and myofascial pain) to a cervical disk injury sustained in the work-related accident.

On January 27, 1993, the petitioner filed a claim for permanent partial disability benefits pursuant to 33 U.S.C. § 908(c), the pertinent text of which is reproduced in the Appendix. In addition to the benefits he already had received under the Maine workers' compensation statute,[2] Barker claimed an entitlement to a scheduled award for a permanent partial disability to his left arm (a scheduled body part). *See id.* § 908(c)(1). Following an evidentiary hearing, the ALJ found (1) that the petitioner had not sustained an injury to his left arm, but only to his neck and shoulder; (2) that such an injury was not listed specifically in the schedule; (3) that, consequently, any award for a resultant permanent partial disability was limited to the amounts recoverable for unscheduled injuries pursuant to 33 U.S.C. § 908 (c)(21); and (4) that the petitioner was not entitled to recovery because, having returned to work at more than his pre-injury average weekly wage, he had demonstrated no loss of earning capacity. In a supplemental decision, the ALJ denied the petitioner's request for attorneys' fees. The Board affirmed both rulings. This proceeding followed.

## II.

### Analysis

#### A.

### Permanent Partial Disability

We first weigh the petitioner's claim for supplemental (scheduled) compen-

---

1. The ALJ found the facts in the first instance, and the Board subsequently adopted those findings. For simplicity's sake, we refer to the findings as those of the Board.

2. Our recent opinion in *Bath Iron Works Corp. v. Director, OWCP,* 125 F.3d 18 (1st Cir.1997), elucidates the overlap between the LHWCA and the

Maine Workers' Compensation Act, and explains that "[i]t is not uncommon for employees connected to maritime affairs to be covered by both federal and state compensation statutes," *id.* at 20. Such concurrent jurisdiction exists in this case.

sation attributable to a putative permanent partial disability. Our review of the Board's ruling on this question is limited in scope. "We examine the record for material errors of law or for impermissible departure from the familiar 'substantial evidence' rubric in connection with the Board's assessment of the hearing officer's factual findings." *Cornell Univ. v. Velez*, 856 F.2d 402, 404 (1st Cir.1988). Under that paradigm, "inferences drawn by the factfinder must be accepted unless irrational." *Id.* at 404 n. 2. This means, of course, that as long as the inferences that the Board chooses to draw are adequately rooted in the evidence, a reviewing court ought not concern itself with whether it might have found a competing set of inferences persuasive. *See Bath Iron Works Corp. v. Director, OWCP*, 109 F.3d 53, 56 (1st Cir.1997); *Sprague v. Director, OWCP*, 688 F.2d 862, 866 (1st Cir.1982).

■ On this occasion, our review is also circumscribed by the myriad factual findings that stand unchallenged. For example, the petitioner does not contest either the Board's finding that his left arm was not injured in the accident or its related finding that the condition of his left arm results solely from his neck and shoulder injuries. He objects instead only to the Board's taxonomy—its classification of the impairment to his left arm as coming within the ambit of a neck and/or shoulder injury because it derives from those injuries. The petitioner says that, regardless of whether the impairment is the product of a direct injury or a symptom of some other (unscheduled) injury, it is a separate compensable harm for purposes of section 908(c).

To resolve this riddle, we must repair to basic precepts of statutory construction. In respect to persons covered by the statute—and the respondent concedes that the petitioner is such a person—the LHWCA provides that "compensation shall be payable ... in respect of disability" which "results from an injury." 33 U.S.C. § 903(a). Although the LHWCA, in something of a tautology, defines the term "injury" as an "accidental injury ... arising out of and in the course of employment," *id.* § 902(2), the parties agree that the December 1989 injury,

which the petitioner sustained while at work, fits within that definition. We turn, then, to the question of disability.

The LHWCA defines the term "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." *Id.* § 902(10). But a diminution of earning capacity is not always a necessary concomitant for disability payments. Under the Act, an award for permanent partial disability can be calculated in one of two ways. *See Potomac Electric Power Co. v. Director, OWCP*, 449 U.S. 268, 269-70, 101 S.Ct. 509, 510-11, 66 L.Ed.2d 446 (1980). If the permanent partial disability is scheduled, that is, described in 33 U.S.C. § 908(c)(1)-(20), the employee is entitled to recover two-thirds of his average weekly wage for a specified number of weeks, irrespective of whether he suffered a loss of earning capacity. If, however, the disability does not fit within the schedule, loss of earning capacity assumes decretory significance: the employee is remitted to subsection (c)(21), which entitles him to recover only an amount equal to two-thirds of the difference between his pre-injury average weekly wage and his post-injury earning capacity for the period of his disability. *See* 33 U.S.C. § 908(c)(21). This distinction is critically important here: if the petitioner cannot qualify for a scheduled award under section 908(c)(1)-(20), then he cannot qualify for any award at all inasmuch as he does not contest the Board's finding that his residual earning capacity has not been diminished. Our inquiry reduces, then, to the operation of the schedule.

The petitioner's claim is stark in its simplicity: his left arm allegedly is permanently impaired, the impairment stems from a compensable injury, and the resultant disability therefore is covered under section 908(c)(1). On this view, the fact that the impairment derives from an injury to his neck (a nonscheduled body part) does not enter into the calculus. We think that this syllogism is insupportable.

Although the language of section 908(c), taken in isolation, may admit of differing interpretations, one thing is certain—an individual can obtain compensation only through

the statutory path appropriate to the character of his injury. The structure and purpose of the statute demand this construction. The LWHCA seeks to compensate covered employees for injuries suffered at work that adversely impact wage-earning capacity. *See* 33 U.S.C. § 902(10) (defining "disability"—a central concept—as "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment"). Congress sought to cover the range of injuries to the human body in section 908(c), and in so doing, distinguished between scheduled and unscheduled injuries: the schedule (the first twenty subsections of section 908(c)) enumerates specific body parts that can suffer injury; and section 908(c)(21) governs, to use Congress's phrase, "[i]n all other cases." Moreover, in describing the unscheduled injuries, Congress specifically noted that all awards must be based upon diminution of earning capacity, but did not so indicate anent the scheduled injuries.

■ This distinction is of relatively little moment, for the purpose of both unscheduled and scheduled compensatory schemes is to redeem lost earning capacity no matter whether the injury afflicts a specified or unspecified body part. *See* 33 U.S.C. § 908(21) (specifically calculating lost wage-earning capacity); *Rupert v. Todd Shipyards Corp.*, 239 F.2d 273, 275–76 (9th Cir.1956) (per curiam) ("Schedules are set up not to put a price on certain parts of the human body, but to ameliorate an otherwise intolerable administrative burden by providing a certain and easily applied method of determining the effect on wage-earning capacity of typical and classifiable injuries."). As any distinction between scheduled and unscheduled injuries rests principally on the ease with which the loss of earning capacity is calculated (by schedule or by proof), we conclude that they are part of the same compensatory scheme, with no room for overlap. Thus, when an individual injures an arm and suffers a permanent partial disability, he must lay claim under section 908(c)(1); a leg, section

908(c)(2); a hand, section 908(c)(3); and so on. The Board found, and the petitioner does not controvert, that he had suffered an injury only to his neck and shoulder. Such an injury is unscheduled under the LWHCA and therefore any compensation in connection with this injury must come from the operation of section 908(c)(21), no matter that the petitioner's symptoms extend beyond the injured area. Consequently, we agree with the Board that pain or loss of function in a scheduled body part that derives from an injury to a non-scheduled body part is not separately compensable under 33 U.S.C. § 908(c)(1)-(20).

We believe that the case law bears out this conclusion. The leading authority is *Potomac Electric*, in which the Supreme Court held that a claimant whose injury falls under the schedule must be compensated thereunder, and that he may not elect alternatively to proceed under 33 U.S.C. § 908(c)(21) in an effort to secure a larger permanent partial disability award. 449 U.S. at 270–71, 101 S.Ct. at 510–11. Although *Potomac Electric* is not precisely in point, it is persuasive authority for the proposition that "the character of the disability determines the method of compensation." *Id.* at 273, 101 S.Ct. at 512. Here, the identifying characteristic of the disability is that it results from an injury to an unscheduled body part (the neck), and that relation determines the method of compensation.

*Potomac Electric* is helpful in another respect as well. The Court there observed that Congress, in 1972, specifically rejected an amendment to section 908(c) that would have permitted an employee suffering from a permanent partial disability caused by a scheduled injury to recover both scheduled and quasi-unscheduled benefits (two-thirds of the employee's lost earning capacity after the expiration of the scheduled period).[3] *See Potomac Electric*, 449 U.S. at 276 n. 14, 101 S.Ct. at 514 n. 14. Though Congress's action was of marginal relevance in *Potomac Electric, see id.*, Congress's rejection of the proposed amendment is highly relevant to the

---

**3.** Tellingly, four years after the *Potomac Electric* decision, Congress amended the LHWCA without revisiting this subject and without changing the

mutually exclusive relationship between scheduled and unscheduled awards in any way.

case at hand; the amendment would have authorized cumulative, not alternative, remedies, and the petitioner here (unlike the employee in *Potomac Electric*) in fact seeks cumulative remedies.[4]

We add yet another fortifying datum. Courts often have remarked that the New York workers' compensation law served as a model for Congress when it enacted the LHWCA in 1927. *See, e.g., Potomac Electric,* 449 U.S. at 275–76, 101 S.Ct. at 513–14 (noting that the LHWCA's "scheduled benefits" language was patterned after similar provisions in the 1922 New York workers' compensation law); *Long v. OWCP,* 767 F.2d 1578, 1581 (9th Cir.1985) (observing that "legislative history and judicial interpretation of the New York act are relevant in interpreting the federal statute"). On this basis, the LHWCA's history supports an interpretation of sections 908(c)(1)-(20) and 908(c)(21) as mutually exclusive. Of particular pertinence here is the fact that, before the enactment of the LHWCA, the New York act itself had been interpreted to preclude recovery under the schedule for an impairment to a scheduled member caused by injury to a member not specified in the schedule. *See Knight v. Ferguson,* 198 A.D. 756, 190 N.Y.S. 659 (N.Y.App.Div.1921) (denying recovery of benefits under the schedule for impairment to claimant's arms caused by injury to back of his neck). And, moreover, as the Supreme Court explained, the New York Court of Appeals, when asked to construe the statutory language classifying scheduled and unscheduled benefits under the New York statute, considered the distinction between scheduled injuries and all other cases "so clear on its face that little discussion of the issue was necessary." *Potomac Electric,* 449 U.S. at 275, 101 S.Ct. at 513 (citing *Sokolowski v. Bank of America,* 261 N.Y. 57, 62, 184 N.E. 492, 494 (1933)). The Court also noted that "[n]othing in the original legislative his-

tory of the Federal Act or in the legislative history of subsequent amendments indicates that Congress did not intend the plain language of the federal statute to receive the same construction as the substantially identical language of its New York ancestor." *Id.* at 276, 101 S.Ct. at 513 (footnote omitted).

To be sure, portions of section 908(c)—section 908(c)(18) and (19), specifically—complicate our reading of the LHWCA. These subsections, when read in isolation, might seem to break down the barriers between scheduled and unscheduled injuries. Sections 908(c)(18) and (19) refer respectively to compensation for "total loss of *use* " and "partial loss of *use* " (emphasis supplied). This language arguably suggests that a claimant might be able to obtain compensation for an injury that affects the use of a member without regard to the locus of the causative injury. These hesitations, however, cannot stand when we examine "the statute as a whole, giving due weight to design, structure, and purpose as well as to aggregate language." *O'Connell v. Shalala,* 79 F.3d 170, 176 (1st Cir.1996).

*Potomac Electric* suggests, and accepted canons of statutory construction require, that section 908(c) be read as a unified compensatory system. In pertinent part, section 908(c) operates as follows: sections 908(c)(1)-(13) deal with the wholesale *loss* of body parts (or hearing), and sections 908(c)(14)-(19) provide a mechanism for discounting awards when the harm does not equal full loss. Thus, section 908(c)(14) governs loss of phalanges; section 908(c)(15) partial loss of limbs; section 908(c)(16) loss of binocular vision or partial loss of sight; section 908(c)(17) partial loss of hands or feet; section 908(c)(18) total loss of use without loss of the member; and section 908(c)(19) partial loss of use without loss of the member. Each of these subsections modifies an award

---

4. The petitioner contends that the Board's decision in *Bass v. Broadway Maintenance,* 28 B.R.B.S. 11 (1994), suggests a different result. In *Bass,* the Board ruled that, if a claimant suffers a disability to a body part not specified in the schedule as a result of an injury to a scheduled member, he may receive benefits under 33 U.S.C. § 908(c)(21) for the consequential injury even if he has received benefits under the sched-

ule for the initial injury. *See id.* at 17–18. But *Bass,* fairly read, is of little assistance, for the petitioner asserts that one who sustains an injury to an unscheduled body part, which later results in sequelae affecting a scheduled body part, should be entitled to benefits for both. This is the obverse of *Bass* and, thus, materially different.

amount designated in sections 908(c)(1)-(13). Because sections 908(c)(14)-(19) are so closely dependent on sections 908(c)(1)-(13), there is no reason to believe that the class of injuries applicable to section 908(c)(14)-(19) should be different from the class of injuries applicable to sections 908(c)(1)-(13).

■ The Ninth Circuit has read section 908(c)(19) in this manner and determined that a claimant who sustains an injury to an unscheduled member, which later results in an impairment to a scheduled member, is entitled to compensation under only under section 908(c)(21). *See Long,* 767 F.2d at 1583 ("An employee who suffers an accidental injury to his back ... may not receive an award of benefits under section 8(c)(2) and section 8(c)(19) of the [LHWCA] for the partial loss of the use of his leg. Those sections do not apply, notwithstanding the fact that as a direct result of the injury to an unscheduled portion of the body, use of a leg has been impaired."); *see also Todd Shipyards Corp. v. Allan,* 666 F.2d 399, 402 (9th Cir. 1982); *Hole v. Miami Shipyards Corp.,* 640 F.2d 769, 772–73 (5th Cir.1981). Other courts also have used section 908(c)(19) in the manner suggested here—as a discount provision—to modify awards under the schedule when injuries to scheduled body parts are not catastrophic. *See Bath Iron Works v. OWCP,* 506 U.S. 153, 159 n. 9, 113 S.Ct. 692, 697 n. 9, 121 L.Ed.2d 619 (1993); *Baker v. Bethlehem Steel Corp.,* 24 F.3d 632, 633 (4th Cir.1994); *OWCP v. Bethlehem Steel Corp.,* 868 F.2d 759, 760 (5th Cir.1989). Our analysis of section 908(c)(18) mirrors our analysis of section 908(c)(19) because of section 908(c)'s internal logic. Just as section 908(c)(19) determines what percentage of the scheduled award is appropriate for partial loss of use, so too does section 908(c)(18) determine the percentage of the scheduled award for total loss of use. The two sections are analytically identical, and thus a claimant seeking an award to compensate for the total loss of use of a scheduled member resulting from an injury to an unscheduled body part

would only be able to recover under section 908(c)(21). *See Long,* 767 F.2d at 1583.

The petitioner insinuates that it is hardhearted to treat section 908(c)(1)-(20), on one hand, and section 908(c)(21), on the second hand, as mutually exclusive in respect to any one injury. We disagree. Payments under section 908(c) supplement regular disability payments, and any covered employee who is permanently partially disabled will have access to some form of compensation. Barker's situation is illustrative: his injury, albeit one to an unscheduled body part, is compensable, in theory, under 33 U.S.C. § 908(c)(21). In most cases, that trade-off will yield more, not less, protection to injured employees. Barker's case is not within the mine-run because he experienced no loss of earning capacity. It is difficult to quarrel with the fairness of that outcome: as a technical planner, Barker receives a more munificent weekly wage and greater benefits than he did as a mechanic.[5]

■ In the last analysis, the petitioner suggests that an employee is entitled to both scheduled and unscheduled benefits when an unscheduled injury results in a permanent impairment to a scheduled body part. This position does not square with either the logic of the Act or the intent of its drafters. We therefore reject it, and hold that an impairment to a scheduled (but uninjured) body part that results from an injury to an unscheduled body part is not compensable under section 908(c)(1)-(20). Although courts should construe the LHWCA liberally to effectuate its remedial purposes, *see Potomac Electric,* 449 U.S. at 281, 101 S.Ct. at 516, it is not the Act's unwavering objective to provide disabled workers with automatic payments to soothe their industrial injuries, *see id.* at 282, 101 S.Ct. at 516–17 (explaining that it "is not correct to interpret the Act as guaranteeing a completely adequate remedy for all covered disabilities").

So ends the petitioner's first assignment of error. The Board's underlying factual finding is unchallenged and, given our holding,

---

**5.** We recognize that, under section 908(c)(21), earning capacity is not necessarily measured by an injured employee's actual post-injury earnings. *See* 33 U.S.C. § 908(h). We need not probe this point, however, because the petitioner makes no claim that his current wages do not accurately reflect his earning capacity.

its legal conclusion is beyond reproof. Thus, we affirm the Board's denial of the petitioner's request for a supplemental (scheduled) award. *See Liberty Mut. Ins. Co. v. Commercial Union Ins. Co.*, 978 F.2d 750, 758 (1st Cir.1992) (holding that reduction in earning capacity is the proper test for availability of permanent partial disability payments in the case of a non-scheduled injury); *Bath Iron Works Corp. v. White*, 584 F.2d 569, 575 (1st Cir.1978) (same).

## B.

### *Attorneys' Fees*

■ The petitioner's second assignment of error involves a subject dear to every lawyer's heart. In the administrative proceedings, the petitioner sought attorneys' fees on the ground that he had "prevailed" on the underlying substantive claim. By this, he apparently meant that, even though he had not secured any additional benefits, his injury nevertheless had been adjudged compensable under the Act. The Board disagreed with this reasoning. It emphasized that the petitioner had not succeeded on his permanent partial disability claim and, thus, had failed to recover any additional compensation. Consequently, it affirmed the ALJ's denial of fees. The petitioner now seeks judicial review.

The LHWCA deals with attorneys' fees in 33 U.S.C. § 928 (reprinted in pertinent part in the Appendix). This statute has two subsections. Subsection (a) authorizes an award of attorneys' fees in cases in which the employer refuses to pay compensation for a work-related injury and the claimant employs the services of an attorney who successfully prosecutes the claim. This subsection has no bearing in this case. After all, the employer honored the petitioner's claim when made and paid all temporary disability benefits promptly and without contest (albeit under the Maine statute, *see supra* note 2).

The petitioner's aspiration therefore hinges on subsection (b).[6]

Subsection (b) provides for attorneys' fees in situations in which the employer accepts liability for compensation, but a controversy develops over the amount of additional compensation to which the employee is entitled and the latter thereafter employs an attorney who successfully prosecutes a claim for such additional compensation. *See Savannah Mach. & Shipyard Co. v. Director, OWCP*, 642 F.2d 887, 889 (5th Cir. Unit B 1981). The petitioner's argument for attorneys' fees under subsection (b) stresses that he was the prevailing party in the sense that the administrative proceedings confirmed his entitlement to LHWCA benefits.

■ This approach distorts the contours of subsection (b). Under that proviso, a claimant who, like Barker, has already received payments from an employer "without an award pursuant to section 914(a)," is entitled to attorneys' fees only if the employer refused to pay some "additional compensation" and the claimant, with the help of counsel, successfully compels such a payment.[7] We read section 928(b), as we must, consistent with its plain meaning, *see Inmates of Suffolk County Jail v. Rouse*, 129 F.3d 649, 655 (1st Cir.1997); *Strickland v. Commissioner, Me. Dep't of Human Servs.*, 48 F.3d 12 (1st Cir.1995), and readily conclude that the applicability of subsection (b) turns on whether the claimant succeeds in securing additional compensation. *See National Steel & Shipbuilding Co. v. United States Dep't of Labor, OWCP*, 606 F.2d 875, 882 (9th Cir.1979) (explaining that the purpose of section 928 "is to authorize the assessment of legal fees against employers in cases where the existence or extent of liability is controverted and the employee-claimant succeeds in establishing liability or obtaining increased compensation in formal proceedings in which he or she is represented by counsel") (citing legislative history). The petitioner's rodomontade con-

---

**6.** The Ninth Circuit has suggested in dictum that subsections (a) and (b) may overlap to some extent. *See National Steel & Shipbuilding Co. v. United States Dep't of Labor, OWCP*, 606 F.2d 875, 882–83 (9th Cir.1979). We need not explore this possibility. Even if subsection (a) were read to cover the petitioner's circumstances, his claim would falter for essentially the same reasons that defeat his claim under subsection (b).

**7.** In the interests of completeness, we reprint 33 U.S.C. § 914(a) in the Appendix.

cerning his overall "success" is therefore beside any relevant point.

This brings us full circle. A hearing officer can grant attorneys' fees under subsection (b) only if the compensation awarded after the claimant obtains the services of counsel "is greater than the amount [already] paid or tendered by the employer." 33 U.S.C. § 928(b). Since the petitioner garnered no such additional compensation as a result of the instant proceeding, the Board did not err in rejecting the fee request.

■ The petitioner has a fallback position. He argues that the petition produced an order for the payment of medical expenses, and that this "benefit" is the functional equivalent of "additional compensation," thereby entitling him to attorneys' fees. It is an open question whether the payment of medical bills constitutes "compensation" under the LHWCA. In *Marshall v. Pletz,* 317 U.S. 383, 63 S.Ct. 284, 87 L.Ed. 348 (1943), after careful analysis of the LHWCA's language and structure, the Supreme Court held that "compensation" and "medical benefits" are distinct terms under the Act. See *id.* at 390, 63 S.Ct. at 288–89. The Court analyzed these terms as used throughout the Act, see *id.* at 390–92, 63 S.Ct. at 288–90, but its holding focused on 33 U.S.C. § 913. The courts of appeals are divided as to the force of *Pletz 's* holding in other LHWCA contexts. *Compare Bethlehem Steel Corp. v. Mobley,* 920 F.2d 558, 560–61 (9th Cir.1990) (holding that *Pletz* applies in interpreting section 933(g)(1)) with *Lazarus v. Chevron USA, Inc.,* 958 F.2d 1297, 1301 (5th Cir.1992) (suggesting, in the context of enforcement proceedings under 33 U.S.C. § 918(a), that the *Pletz* Court "did not say that money paid to the employee for debts incurred in obtaining medical care could not constitute compensation").

Because there is a fundamental flaw in the petitioner's case, we need not attempt to answer today the question of whether medical benefits are (or are not) subsumed within the phrase "additional compensation." The record is bereft of any credible evidence indicating that the employer unreasonably withheld the payment of medical bills at any time, or, put another way, that the petition brought about a payment that would not otherwise have occurred. When the employer first received notice of the petition, Barker had checked a box on the applicable Department of Labor form indicating that his employer already was defraying accident-related medical expenses. In a similar vein, the petitioner testified that his employer had been paying the medical bills stemming from his injuries all along. Thus, the issue of liability for medical expenses was not controverted at any time,[8] and it is unfair to suggest that the prosecution of the petition enhanced Barker's position in this respect.

The petitioner seizes upon one medical bill that was unpaid as of the hearing date. But, that bill remained outstanding only because Barker had not yet submitted it to his employer for payment. The employer paid the bill promptly after the hearing. There is nothing in the record to suggest either that the filing of the petition served as a catalyst to payment or that the employer would have refused to pay this particular bill in the ordinary course had no petition eventuated. Thus, even if "medical benefits" are considered as "additional compensation" for the purpose of section 928(b)—a matter on which we do not opine—the administrative proceedings did not yield any additional compensation for the petitioner.

### III.

### *Conclusion*

We need go no further. We hold that the Board properly rejected the petitioner's entreaty for both a supplemental scheduled award and counsel fees. Hence, the petition for review is ***denied.***

---

8. In his supplemental order denying attorneys' fees, the ALJ found that medical benefits had not been in controversy at the hearing. His order stated:

> Although I explicitly found that claimant's injury was work-related, and ordered that employer to furnish medical care and treatment, those were not issues which had been contested by the employer before this Office.

*APPENDIX*

## § 908. Compensation for disability

Compensation for disability shall be paid to the employee as follows:

\* \* \*

(c) Permanent partial disability: In case of disability partial in character but permanent in quality the compensation shall be 66 2/3 per centum of the average weekly wages, which shall be in addition to compensation for temporary total disability or temporary partial disability paid in accordance with subsection (b) or subsection (e) of this section, respectively, and shall be paid to the employee, as follows:

(1) Arm lost, three hundred and twelve weeks' compensation.

(2) Leg lost, two hundred and eighty-eight weeks' compensation.

(3) Hand lost, two hundred and forty-four weeks' compensation.

(4) Foot lost, two hundred and five weeks' compensation.

(5) Eye lost, one hundred and sixty weeks' compensation.

(6) Thumb lost, seventy-five weeks' compensation.

(7) First finger lost, forty-six weeks' compensation.

(8) Great toe lost, thirty-eight weeks' compensation.

(9) Second finger lost, thirty weeks' compensation.

(10) Third finger lost, twenty-five weeks' compensation.

(11) Toe other than great toe lost, sixteen weeks' compensation.

(12) Fourth finger lost, fifteen weeks' compensation.

(13) Loss of hearing:

(A) Compensation for loss of hearing in one ear, fifty-two weeks.

(B) Compensation for loss of hearing in both ears, two-hundred weeks.

(C)-(E) [not relevant here]

(14) Phalanges: Compensation for loss of more than one phalange of a digit shall be the same as for loss of the entire digit. Compensation for loss of the first phalange shall be one-half of the compensation for loss of the entire digit.

(15) Amputated arm or leg: Compensation for an arm or a leg, if amputated at or above the elbow or the knee, shall be the same as for a loss of the arm or leg; but, if amputated between the elbow and the wrist or the knee and the ankle, shall be the same as for loss of a hand or foot.

(16) Binocular vision or per centum of vision: Compensation for loss of binocular vision or for 80 per centum or more of the vision of an eye shall be the same as for loss of the eye.

(17) Two or more digits: Compensation for loss of two or more digits, or one or more phalanges of two or more digits, of a hand or foot may be proportioned to the loss of use of the hand or foot occasioned thereby, but shall not exceed the compensation for loss of a hand or foot.

(18) Total loss of use: Compensation for permanent total loss of use of a member shall be the same as for loss of the member.

(19) Partial loss or partial loss of use: Compensation for permanent partial loss or loss of use of a member may be for proportionate loss or loss of use of the member.

(20) Disfigurement: Proper and equitable compensation not to exceed $7,500 shall be awarded for serious disfigurement of the face, head, or neck or of other normally exposed areas likely to handicap the employee in securing or maintaining employment.

(21) Other cases: In all other cases in the class of disability, the compensation shall be 66 2/3 per centum of the difference between the average weekly wages of the employee and the employee's wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of partial disability.

(22) In any case in which there shall be a loss of, or loss of use of, more than one member or parts of more than one member set forth in paragraphs (1) to (19) of this subsection, not amounting to permanent total disability, the award of compensation shall be

for the loss of, or loss of use of, each such member or part thereof, which awards shall run consecutively, except that where the injury affects only two or more digits of the same hand or foot, paragraph (17) of this subsection shall apply.

(23) Notwithstanding paragraphs (1) through (22), with respect to a claim for permanent partial disability for which the average weekly wages are determined under section 910(d)(2) of this title, the compensation shall be 66 2/3 per centum of such average weekly wages multiplied by the percentage of permanent impairment, as determined under the guides referred to in section 902(10) of this title, payable during the continuance of such impairment.....

\* \* \*

## § 914.  Payment of compensation

(a)  Manner of payment

Compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer.

\* \* \*

## § 928.  Fees for services

(a)  Attorney's Fee;  Successful Prosecution of Claim

If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter, and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier in an amount approved by the deputy commissioner, Board, or court, as the case may be, which shall be paid directly by the employer or carrier to the attorney for the claimant in a lump sum

after the compensation order becomes final.

(b)  Attorney's Fee;  Successful Prosecution for Additional Compensation ...

If the employer or carrier pays or tenders payment of compensation without an award pursuant to section 914(a) and (b) of this title, and thereafter a controversy develops over the amount of additional compensation, if any, to which the employee may be entitled, the deputy commissioner or Board shall set the matter for an informal conference and following such conference the deputy commissioner or Board shall recommend in writing a disposition of the controversy.  If the employer or carrier refuse to accept such written recommendation, within fourteen days after its receipt by them, they shall pay or tender to the employee in writing the additional compensation, if any, to which they believe the employee is entitled.  If the employee refuses to accept such payment or tender of compensation, and thereafter utilizes the services of an attorney at law, and if the compensation thereafter awarded is greater than the amount paid or tendered by the employer or carrier, a reasonable attorney's fee based solely upon the difference between the amount awarded and the amount tendered or paid shall be awarded in addition to the amount of compensation. The foregoing sentence shall not apply if the controversy relates to degree or length of disability, and if the employer or carrier offers to submit the case for evaluation by physicians employed or selected by the Secretary, as authorized in section 907(e) of this title and offers to tender an amount of compensation based upon the degree or length of disability found by the independent medical report at such time as an evaluation of disability can be made.  If the claimant is successful in review proceedings before the Board or court in any such case an award may be made in favor of the claimant and against the employer or carrier for a reasonable attorney's fee for claimant's counsel in accord with the above provisions.  In all other cases any

claim for legal services shall not be assessed against the employer or carrier.