# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 15, 2011

No. 10-60804

Lyle W. Cayce
Clerk

CALEB BRETT, L.L.C.; LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

Petitioners

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, US
DEPARTMENT OF LABOR; RICK O. CARTER,

Respondents

On Petition for Review of an Order of the Benefits Review Board,
United States Department of Labor
(08-0741)

Before GARZA, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Petitioners, Caleb Brett, LLC ("Caleb Brett") and Liberty Mutual Fire
Insurance Company ("Liberty Mutual"), seek review of an Order of the Labor
Department's Benefits Review Board. Because we lack jurisdiction to grant the
only relief requested by Petitioners, the petition is DISMISSED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-60804

## FACTS AND PROCEEDINGS

Respondent Rick Carter was seriously injured in 1991 while working for Caleb Brett as a longshoreman. Carter filed a claim under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–951. A 1996 decision by an Administrative Law Judge ("ALJ") awarded Carter continuing medical expenses. At all relevant times, Dr. Edgar Viets, a chiropractor, has been Carter's designated treating physician within the meaning for the LHWCA. Viets performed "chiropractic adjustments" on Carter's neck and spine and also ordered preparatory massage and ultrasound treatments (together, the "adjunct therapies"), which were performed by a licensed massage therapist in Viets' office, in conjunction with his chiropractic treatments.

Following the 1996 compensation order, Caleb Brett's insurer, Liberty Mutual, began paying for all treatments billed by Viets, but in 2006, it stopped paying for the adjunct therapies. Carter brought the nonpayment to the attention of the San Francisco district director of the Labor Department's Office of Workers' Compensation Programs ("OWCP"), who referred the matter to an ALJ for resolution. On June 24, 2008, the ALJ issued a Decision and Order Denying Benefits (the "ALJ Decision"), in which he concluded that although the adjunct therapies were reasonable and necessary for the treatment of Carter's injury, they were not reimbursable under the LHWCA and its implementing regulations.

Carter appealed the ALJ Decision to the Department of Labor Benefits Review Board (the "Board"). In a "Decision and Order" dated April 16, 2009 (the "First Board Order"), the Board reversed, finding that the adjunct therapies were reimbursable. Liberty Mutual attempted to appeal the First Board Order, but mistakenly filed its Petition for Review, dated June 12, 2009, with the Board

No. 10-60804

instead of with this court.[1] Liberty Mutual consequently failed to file an appeal of the First Board Order within the applicable sixty-day window. *See* 33 U.S.C. § 921(c). Meanwhile, Liberty Mutual refused to reimburse the unpaid bills for the adjunct therapies. In response, Carter petitioned the OWCP district director for a supplemental order declaring default under the 1996 continuing compensation order. Such a supplemental order is necessary to convert a Board decision into an enforceable order that can be brought into district court for entry of judgment. Liberty Mutual argued that a supplemental order declaring default was inappropriate because the First Board Order was not an "Order requiring payment of benefits" since it did not include express findings as to the amount of the award.

Perhaps convinced by Liberty Mutual's argument, the district director did not issue the supplemental order promptly. On December 14, 2009, Carter submitted a filing to the Board entitled "Motion for Clarification," seeking confirmation that the First Board Order had in fact been a final award of compensation. In an Order dated August 18, 2010 (the "Second Board Order"), the Board responded to Carter's motion by "clarify[ing] that a reversal of the administrative law judge's denial of medical benefits constitutes an *award* of medical benefits to claimant, particularly in this case, as the amount was not in dispute." The Board went on to explicitly state that Carter's remedy for non-payment was to seek enforcement of the First Board Order, as he had already attempted to do.

Petitioners filed a timely petition for review of the Second Board Order under § 21(c) of the LHWCA.[2] After Petitioners filed this appeal, the San

---

[1] Liberty Mutual could have petitioned the Board for reconsideration, but did not.

[2] Although Carter's case was administratively transferred to the district director in San Francisco when Carter moved to the west coast after his injury, the injury occurred near Houston, and § 21(c) vests the court of appeals for "the circuit in which [a worker's] injury

3

No. 10-60804

Francisco district director granted Carter a Supplementary Order Declaring Default. On October 20, 2011, the District Court for the Northern District of California, acting on Carter's application, directed the entry of judgment on the district director's Supplementary Order.

## ANALYSIS

The parties all agree that there are serious questions regarding this court's jurisdiction to hear this appeal. Petitioners argue that neither the First nor the Second Board Order constitutes an appealable "final order" within the meaning of this court's decision in *Lazarus v. Chevron U.S.A., Inc.*, 958 F.2d 1297, 1303 (5th Cir. 1992), thereby undercutting the grounds for their own petition. They urge the court either to (1) dismiss for lack of jurisdiction on the basis that the Second Board Order is not a final award and is therefore unappealable under the LHWCA, or (2) disregard the long-elapsed time bar and reverse the *First* Board Order on the underlying substantive question concerning the reimbursability of the adjunct therapies. Petitioners evidently hope that either outcome would thwart Carter's continued efforts to have the Board's orders enforced.

The Director of the OWCP (the "Director"), as a respondent, has moved for dismissal for lack of subject matter jurisdiction. The Director argues that the court lacks jurisdiction because the Board lacked jurisdiction to issue the Second Board Order, which it reads as a reconsideration of the First Board Order. The Director reasons that because neither party moved for reconsideration of the First Board Order within the thirty-day statutory window, the Board had no authority to revisit its previous decision, and the Second Board Order is therefore a non-appealable legal nullity.

In response to the Director's motion to dismiss, Carter argues that the Second Board Order purported only to *clarify* the meaning, rather than

occurred" with review jurisdiction over final Board orders.

4

No. 10-60804

reconsider the substance, of the First Board Order, which Carter argues the Board had inherent authority to do. Carter therefore concludes that the Second Board Order is a valid and appealable final order, but because it made no new substantive decisions, the only issue potentially reviewable by this court is the correctness of the Second Board Order's declaration that the First Board Order was final and enforceable.[3]

Importantly, Petitioners' only prayer for relief requests vacatur of the *First* Board Order and reinstatement of the ALJ Decision. Moreover, their limited request for relief is not a simple oversight, as the vast majority of their brief attacks the merits of the First Board Order's substantive determination that the adjunct therapies were reimbursable. Thus, Petitioners are seeking review only of the First Board Order, but they fail to advance any argument as to how we could properly consider the merits of the First Board Order. Either (1) the First Board Order was, as Carter and the Director argue, a final order within the meaning of *Lazarus*, in which case it became unreviewable sixty days after it was issued, or (2) neither the First nor the Second Board Order was a final order, as Petitioners argue, in which case Petitioners have nothing to appeal. Petitioners' only attempt to navigate this dilemma is their frivolous request that the court disregard the jurisdictional question and consider the "primary substantive issue," meaning the question of whether the adjunct therapies are properly reimbursable.

CONCLUSION

There is no route by which we can reach the merits of the issue for which Petitioners seek review. The petition is therefore DISMISSED for lack of jurisdiction to consider Petitioners' requested relief.

---

[3] Carter separately argues that the court has no jurisdiction to hear Petitioners' appeal because the district court in the Northern District of California has entered judgment against Petitioners.